# FEBRUARY, 1940

JUNIUS SIMONDS ET AL V. STANOLIND OIL & GAS COMPANY ET AL.

No. 7308. Decided March 16, 1938.
Rehearing overruled April 27, 1938.
Second Motion for rehearing overruled February 7, 1940.
(114 S. W., 2d Series, 226; 136 S. W., 2d Series, 207.)

334

*Ralph B. Shank,* of Dallas, *Raymond P. Elledge* and *Vernon Elledge,* both of Houston, *Greenwood, Moody & Robertson* and *Dan Moody,* all of Austin, for plaintiff in error.

Where a limitation claimant asserts title to two tracts of land under a deed describing both tracts, and the true titles to both tracts are not in one and the same party, actual adverse possession of but one of the two tracts does not constitute constructive adverse possession of the other tract. Lowry v. McDaniel, 124 S. W. 710; Bunton v. Cardwell, 53 Texas 408; Lake v. Earnest, 116 S. W. 865; Gerhart v. Moore, 229 S. W. 876.

*Carl W. Wade, E. S. McCord, Coke & Coke, Turner, Rodgers & Winn, M. S. Church, Prentice Wilson,* all of Dallas, and *Clay Tallman* and *L. A. Thompson, Jr.,* both of Tulsa, Okla., for defendants in error.

Defendants and those under whom they hold having had and held peaceable, adverse and continuous possession and use of the land for a period for more than ten consecutive years before the filing of plaintiffs' suit the trial court did not err in directing a verdict in favor of defendants. Roseborough v. Cook, 108 Texas 364, 194 S. W. 131; Empire Gas & Fuel Co. v. Albright, 126 Texas 485, 87 S. W. (2d) 1092; Siler v. Jones, 129 Texas 18, 100 S. W. (2d) 352.

MR. JUDGE SMEDLEY of the Commission of Appeals, delivered the opinion for the Court.

The Court of Civil Appeals affirmed the judgment of the district court rendered pursuant to an instructed verdict in favor of defendants in error in the suit of plaintiffs in error for the recovery of an undivided one-half interest in a tract of land containing 110 acres in Gregg County. 103 S. W. (2d) 784. We agree with the statement in the opinion of the Court of Civil Appeals that the controlling question "is one of limitation under the five-year statute (Vernon's Annotated Civil Statutes, Article 5509) during the period from and including the year 1923 to and including the year 1927," but we do not agree with the conclusion of that court that the trial court was correct in peremptorily instructing the jury in favor of defendants in error under that statute.

The tract of land in controversy is the east half, or 110 acres off the east end, of a tract described as containing 200 acres of land out of the southwest corner of the Pleasant McAnally survey on the Sabine River, which tract of 200 acres was conveyed by L. S. Markham to Jack Smith and Ellen Smith, husband and wife, in the year 1878. It was proven by undisputed evidence that Jack and Ellen Smith acquired good title to the 200 acres of land by adverse possession of more than ten years. At the time of Jack Smith's death in 1889 he and his wife owned the 200 acre tract in the McAnally survey and also 200 acres of land in the Hart survey. Thereupon the 400 acres of land were partitioned among Ellen Smith, the surviving wife, and the three children, Louise Moseley, Annie Johnson and Charley Smith, the east half of the 200 acre tract in the McAnally survey being given to Ellen Smith and the west half of said tract to Louise Moseley. On September 18, 1903, Ellen Smith by deed executed also by the children conveyed the east half, or 100 acres off the east side, of the 200 acre tract to Alfred Sammons and Margaret Sammons, who were husband and wife. This deed was not filed for record until February 9, 1935. It is shown that the correct name of the grantee was Simonds but that members of the family sometimes spelled the name Sammons, Simmonds or Sammon. Margaret Simonds, without having executed any conveyance of her interest in the land, died intestate in the year 1906, leaving many children. Plaintiffs in error are her heirs and as such claim title to an undivided one-half interest in the 110 acre tract under the deed above described from Ellen Smith and others to Alfred and Margaret Sammons.

Alfred Simonds, by deed dated January 3, 1916, and filed for record the next day, conveyed the 110 acre tract to W. M. Weathersby. Defendants in error have a chain of title under

that deed and through Percy McGeorge, to whom the 110 acre tract and a 53 acre tract of land out of the same survey were conveyed by Oklahoma Farm Mortgage Company on March 15, 1922. Defendants in error undertook to prove a limitation title to the 110 acre tract by Percy McGeorge's adverse possession of the land through tenants during the year 1923 to 1927, both inclusive.

■ The 53 acre tract lies to the northwest of the 110 acre tract and for a distance of about 96 varas its south line coincides with the north line of the 110 acre tract. During the years 1923 to 1927 the two tracts were separately fenced. There was a wagon road between them and on each tract was a small boxed house. Percy McGeorge, however, considered the two tracts as one farm of 163 acres and as such paid taxes on them. The opinion of the Court of Civil Appeals states that "There is no question but that McGeorge held the 53 acre tract adversely to all persons." While the evidence as to possession of the 53 acre tract by McGeorge through tenants is somewhat vague, we will assume, without deciding it, that he had during the years 1923 to 1927, both inclusive, such exclusive, continuous and adverse possession of the 53 acre tract as is required for the acquisition of title under the statute of limitations. It is further stated in the opinion of the Court of Civil Appeals that "There is some dispute as to whether McGeorge through tenants actually used and cultivated any part of the 110 acres during the years 1923 and 1927." It very clearly appears from an examination of the statement of facts that an issue of fact was made by the evidence as to actual possession of the 110 acres during the five years. The evidence offered by defendants in error, which related in the main to the renting of the property and the collection of rents from crops, is not of itself conclusive. Brymer v. Taylor, 5 Texas Civ. App., 103, 23 S. W. 635. Witnesses for plaintiffs in error testified that during the years 1923 and 1927 no one was farming the 110 acre tract or using it or living in the house on it and that the fences were down.

■■ Notwithstanding the fact that there was a jury issue as to actual possession of the 110 acre tract for the five year period, the Court of Civil Appeals held that actual possession of the 53 acre tract by McGeorge constructively extended to the 110 acre tract and that, by such constructive possession, the payment of taxes and claim under recorded deeds conveying both tracts, McGeorge acquired title under the five year statute to the interest of plaintiffs in error in the 110 acre

tract. In making such decision the Court of Civil Appeals applied the first of two rules announced by Associate Justice Williams in Allen v. Bogges, 94 Texas 83, 85, 58 S. W. 833, that is, that a grantee's actual possession of one of two distinct but adjacent tracts conveyed by the same deed will constructively extend to the other tract "unless such possession is to be limited by another rule to which we shall refer." The other or second rule referred to by Justice Williams is that of Turner v. Moore, 81 Texas 206, 16 S. W. 929, which he thus states: "Where a deed describes land part of which is owned by one person and the remainder by another and an actual entry is made under it upon land of one of the owners, the possession thus taken cannot be held to extend by construction to the land of the other, though the deed embraces it." It is the rule of Turner v. Moore and not that applied in Allen v. Bogges that is appropriate to the instant case, for the land that McGeorge actually possessed during the five year period was the 53 acre tract, which according to the opinion of the Court of Civil Appeals was never owned or claimed by plaintiffs in error. We do not find in the record evidence establishing conclusively the fact that plaintiffs in error did not own the 53 acre tract, but there is evidence from which it may reasonably be inferred that they never owned or claimed it, and since the appeal is from an instructed verdict in favor of defendants in error we assume the correctness of the statement made by the Court of Civil Appeals. The 53 acre tract first appeared in defendants in error's chain of title when Robert Davis in the year 1919 executed a deed of trust conveying the 110 acre tract and also the 53 acre tract to a trustee to secure several notes payable to Oklahoma Farm Mortgage Company. Thereafter the deeds in the chain of title of defendants in error conveyed the 53 acre tract as well as the 110 acres.

As shown by the opinion, the rule of Turner v. Moore was not applied in Allen v. Bogges, for the reason that the record gave no information as to the condition of the title. The plaintiffs, who went into possession of one tract under a deed conveying two adjoining tracts, recovered upon their claim of title by limitation. There being no evidence that defendants either had title or had no title to either tract, the plaintiffs' possession presumptively extended to all of the land described in the deed.

■ In Turner v. Moore the plaintiff Moore had title to two tracts of land in controversy aggregating 833 acres, part of the English league, unless defeated by the limitation claim of

Turner, the defendant. Turner, under a deed conveying to him the entire league, took and maintained actual possession of 90 acres but had no actual possession of any part of the land in controversy. It was held that the actual possession by Turner of part of the land conveyed to him did not give him constructive possession of the land to which Moore had title, for the reason that Turner was not in actual possession of land owned or claimed by Moore. Judge Tarlton, writing the opinion adopted by the Court, correctly likened the possession of Turner to the possession of the occupant of land covered by a junior grant partly in conflict with a senior grant, the occupant not being in actual possession of any portion of the land within the conflict. Possession of that part of the junior grant not in conflict, being possession of land not owned by him who has title to the senior grant, does not give notice of hostile claim to land within the conflict and therefore will not support title to it by limitation. Peyton v. Barton, 53 Texas 298; Parker v. Baines, 65 Texas 605. Chief Justice Willie in the opinion in the case last cited said:

"It is necessary, to set the statute of limitations in motion, that the possession be actual, visible, notorious, distinct and hostile. That possession cannot be of this character as against the true owner, which is not upon his land, but upon the premises of the opposing claimant. In such case, it is, in fact, as in appearance, the enjoyment of a right to which the latter is entitled by law, and should be construed as such, rather than as an attempt to encroach upon the rights of another."

Houston Oil Company of Texas v. Wm. M. Rice Institute, 194 S. W. 413, cited and quoted in the opinion of the Court of Civil Appeals, involved grants partly in conflict, but there was actual possession by the limitation claimant of land within the conflict. Houston Oil Company, the defendant, had title to the Howard survey. The Porter survey, which was junior to the Howard and partly in conflict with it, was divided into two contiguous tracts, the Hext tract and the Ford tract, and Rice Institute, claiming under a deed conveying these two tracts, had actual possession of all of the Hext tract but no actual possession of the Ford tract. The land in controversy was that part of the Porter survey and its two subdivisions which conflicted with the Howard survey. It was held that possession by Rice Institute of the Hext tract gave it constructive possession of the Ford tract, both having been conveyed to it by the same deed. In so holding the court said: "As the record title to both of said tracts under the Howard patent was in appellant

(Houston Oil Company) during the entire period of appellee's occupancy, the possession by appellee of one of said tracts under said deed extended to both of said tracts, constituting the land in controversy." It is apparent that the decision is based upon the fact that Rice Institute was actually in possession of land claimed and owned by Houston Oil Company and that the decision would have been different if the possession had confined to that part of the Porter survey not in conflict with the Howard survey owned by Houston Oil Company.

Empire Gas & Fuel Company v. Albright, 126 Texas 485, 87 S. W. (2d) 1092, does not support the holding of the Court of Civil Appeals. No question of adverse possession was discussed in the opinion of the Court of Civil Appeals in that case. 64 S. W. (2d) 1096. We find from an examination of the record, in connection with the opinion of the Commission of Appeals adopted by the Supreme Court, that the decision that Mrs. Albright lost title to the 38 acre tract (described as excess) under the five year statute of limitation is based upon the jury's verdict construed in the opinion as a finding that the defendants had actual possession of all of the land involved in the suit, including the excess. The verdict was correctly so construed. The special issue relating to adverse possession submitted to the jury the question whether it found that the defendants had had peaceable and adverse possession of "the land involved in the suit" (which included the 38 acres) for any period of five years. In connection with this issue the court defined "adverse possession" to mean "an actual and visible appropriation of the land commenced and continued, etc." The jury answered the issue in the affirmative. The opinion contains no reference to the question of constructive possession and, since it rests upon a jury finding of actual possession of the 38 acre tract as well as of the 400 acre tract, it is not to be taken as deciding that actual possession of the 400 acres would be extended by construction to the 38 acres.

In Word v. Box, 66 Texas 596, 3 S. W. 93, Word and Reagan, appellants, claimed title by limitation holding under a deed that conveyed to them the two tracts of land in controversy together with another contiguous tract. They acquired by the deed good title to such other contiguous tract but no title to the land in controversy. Their actual possession was of the tract to which they had acquired title. It was held that under such facts and because appellants did not actually occupy any

part of the land in controversy the statutes of limitation could not be made operative. Associate Justice Stayton said in the opinion:

"The appellants claimed that such a possession of land, which they really owned, operated to give them possession of the two tracts in controversy, and so, from the fact that the three tracts were contiguous and conveyed to them by one deed. The rule is, that the true owner of land in the actual possession of a part, in law, is deemed to be in the possession of the entire tract so owned, unless some other person be in the actual adverse possession of a part; *but it has never been held that one who has an actual possession of land which he owns, will be deemed in law to be in possession of land which he does not own, from the simple fact that he may claim under a deed which purports to convey land to him, to which he gets no title, as well as land to which he thereby acquires title, even though the tracts purporting to be conveyed be contiguous to that to which title passes.*

"This is well illustrated by the numerous adjudications between claimants of conflicting grants from the government. In such cases, to enable the junior grantee to sustain a plea of limitation, it is not enough that he show that he has had possession of that part of his grant not in conflict, but he must show an adverse actual possession of that part of his grant in conflict with the elder. Mere color of title, unaccompanied by an actual adverse possession of some part of the land to which the color of title relates, is of no efficacy.

"The reasons for this are manifest. The true owner has the constructive possession or seizin, and his disseizin cannot be brought about without an actual adverse possession. If there be no disseizin the statute of limitation can have no operation. By force of a statute, one entering upon the land of another, without color of title, who holds peaceable and adverse possession may have a possession which, by construction of law, will extend to the statutory limit, though his actual possession be of a less area, but there can be no constructive possession, even when the claim is under color of title, unless there be an actual possession of some part of the land to which the mere color of title relates.

"The appellants never actually occupied any part of the land in controversy, and the statutes of limitation cannot be made operative under the facts proved, whether the land was of the separate or community estate of James E. Box." (Our italics.)

■ Applying to the facts of the instant case the rule and the

reasons for it so clearly stated in the foregoing quotation, plaintiffs in error by reason of their title to the undivided interest in the 110 acre tract in controversy were, when McGeorge took his deeds to the 110 acre tract and the 53 acre tract, constructively in possession of the 110 acre tract. They could have been deprived of such constructive possession only by actual adverse possession on the part of McGeorge of some part of the 110 acre tract, and not by McGeorge's possession of the 53 acre tract which plaintiffs in error neither owned nor claimed.

■ Another reason for the rule of the case last cited and of the Turner v. Moore, suggested by those cases and by others above referred to and hereinafter cited is, to use the language of Chief Justice Phillips in Roseborough v. Cook, 108 Texas 364, 366, 194 S. W. 131: "The law of limitation of actions for land is founded upon notice." He said further in the same opinion, when speaking of the recorded deed required by the law governing five years limitation: "For the purpose of such limitation it performs an office unrelated to title, and although as a conveyance of title it may be futile. That office is simply to aid the possession as a means of notice of the adverse claim to the land." This of course does not mean that the recorded deed of itself gives notice. Associate Justice Brown said in Holland v. Nance, 102 Texas 177, 183, 114 S. W. 346: "The record of a deed does not constitute possession of the land, and, in fact, is not notice of possession. When a party has actual possession of a portion of a tract of land and has a deed for it upon record, that record is notice to all those who claim in opposition to him as to the character of his claim and the extent of it, but without possession adverse owners are not charged with notice of the fact that the deed is upon record or that any claim is made to the land." Possession gives constructive notice of the possessor's right but a land owner is not charged with notice by the registration of an instrument which is not in his chain of title. See Jones v. Siler, 129 Texas 18, 100 S. W. (2d) 352, 355 and cases there cited.

In cases like Houston Oil Company of Texas v. Wm. M. Rice Institute, 194 S. W. 413, above discussed, and Snow v. Letcher, 154 S. W. 355, where the true title to both tracts of land conveyed by the deed to the limitation claimant is in the same person or persons, actual possession of one of the tracts gives notice to the true owner and points to the deed records for information as to the character and extent of the claim of possession. Such notice is given through and because of the

actual possession of land belonging to him whose title the limitation claimant is seeking to acquire. There is no such notice given and no direction to the deed records when the possession is of land belonging to the limitation claimant or to a third party. Possession of a tract of land owned by one person gives no notice of hostile claim to a tract owned by another.

Defendants in error present as a reason for distinguishing the instant case from Turner v. Moore the fact that McGeorge through tenants had actual possession of the 110 acre tract during parts or the whole of the years 1924, 1925 and 1926, whereas in Turner v. Moore it appears that Turner was never actually in possession of the land in controversy. We find in this difference in the facts no ground for the application of a different rule. Actual possession of the 110 acre tract by McGeorge during part of the five years did not operate as a continuous disseisin extending throughout the whole of the period. Whenever the actual possession of the invader ceased the constructive possession of the true owner became again effective. Adverse possession, whether actual or constructive, will not ripen into title unless the possession is continuous throughout the period of prescription. The five year statute names three requisites for giving of notice to the land owner, the adverse possession, the payment of taxes, and the recorded deed, and the three must concur and must continue through the five year period. The defendant's possession of land not owned or claimed by the plaintiff cannot be substituted for the notice required to be given by possession, even though the defendant has of record a deed conveying to him both the land which he possesses and the plaintiff's land, for the reason that neither such possession nor the recorded deed charges the plaintiff with notice that the defendant is claiming his land. Other authorities support the conclusion that McGeorge's possession of the 53 acres did not give him constructive possession of the 110 acre tract: Faison v. Primm, 34 S. W. 834; Cook v. Lister, 15 Texas Civ. App. 31, 38 S. W. 380; McLemore v. Lomax, 38 Texas Civ. App. 589, 86 S. W. 635.

We do not approve the conclusion of the Court of Civil Appeals that there was no issue to be determined by the jury with respect to the payment of taxes on the land in controversy during the claimed period of limitation. While Meriweather, agent of McGeorge, testified positively in behalf of defendants in error that he paid the taxes for McGeorge during the years 1923 to 1927, inclusive, strongly supporting his

testimony by cancelled checks, bank statements and reports, it is our opinion that the statement from the tax records of Gregg County, certified by the tax collector and showing that Robert Davis rendered the land for taxation and paid the taxes for the years 1923 and 1924 and paid the taxes the year 1925 when the land was not rendered, cannot, in view of other facts in evidence, be treated as no evidence.

Robert Davis lost such title as he had to the land by foreclosure in the year 1921 and in 1922 conveyed the land to McGeorge. There is evidence, however, that he thereafter asserted some sort of claim to the land, tried to collect rent from McGeorge's tenants and rented the land to a tenant for the year 1924. Meriweather testified that such possession as Robert Davis had or attempted to exercise was without his permission and that he regarded him as a trespasser. Payment of taxes on the land by Robert Davis was not inconsistent with his conduct as above related. Tax receipts were not offered in evidence. McGeorge testified, when interrogated about tax receipts showing payment of taxes on the 110 acres for the years 1921 to 1932, that any tax receipts that had been returned to him were in the possession of Norristown Penn. Trust Company and further that all letters and papers in connection with the land were in possession of that company. There is no evidence of any effort to procure the tax receipts.

■ Such being the evidence, we cannot hold that the certificate of the county tax collector stating that his records showed payment of taxes for the years 1923 to 1925 to have been made by Robert Davis is not evidence contradictory of the testimony of Meriweather that he paid the taxes for those years. In all probability the evidence with respect to payment of taxes can be so thoroughly developed on another trial that the issue need not be submitted to a jury.

■ After careful consideration of the evidence, we approve the decision of the Court of Civil Appeals that the evidence as a whole conclusively proves that Percy McGeorge, in the year 1922, when the deeds to him were executed and recorded and also in the year 1923 when, according to evidence offered by defendants in error, he took possession of the land by tenant, was a non resident of Texas. This being true, the provisions of Article 5537, Revised Civil Statutes of 1925, suspending the running of limitation during absence from the state, have no application to him. Huff v. Crawford, 88 Texas 368, 30 S. W. 546, 31 S. W. 614, 53 Am. St. Rep., 763; L. F. Wilson & Co. v. Daggett, 88 Texas 375, 31 S. W. 618, 53 Am. St. Rep., 766;

Watts v. McCloud, 205 S. W. 381 (application for writ of error refused).

■■ Defendants in error present, as supporting the trial court's action in peremptorily instructing the jury in their favor, the proposition that they are under the undisputed evidence innocent purchasers for value, protected by the registration statute (Article 6627, Revised Civil Statutes of 1925) against the claim of plaintiffs in error, which is under the deed executed September 18, 1903, by Ellen Smith to Alfred Sammons and Margaret Sammons and filed for record February 9, 1935. Since both Alfred Sammons and Margaret Sammons, husband and wife, were named as grantees, each acquired by the deed the legal title to an undivided one-half interest in the land and when Margaret Sammons died intestate without disposing of her interest, the legal title to her undivided one-half interest vested in her heirs. Mitchell v. Schofield, 106 Texas 512, 171 S. W. 1121; Patty v. Middleton, 82 Texas 586, 591, 17 S. W. 909; Howard v. Commonwealth Building & Loan Association, 127 Texas 365, 94 S. W. (2d) 144. Defendants in error acquired through the deed executed by Alfred Simonds to W. M. Weathersby on January 3, 1916, the undivided one-half interest that belonged to Alfred Simonds. It is necessary to the successful assertion of their claim as innocent purchasers for value of the undivided one-half interest that passed to Margaret Simonds under the unrecorded deed that they show that they have acquired the apparent title or the legal title as appearing of record to that half interest. Waggoner v. Dodson, 92 Texas 415, 422, 73 S. W. 517; Temple Lumber Company v. Broocks, 165 S. W. 507 (application for writ of error refused) ; 43 Tex. Jur. pp. 621-622, Sec. 366.

■ Prior to the execution of the deed from Ellen Smith to Alfred and Margaret Sammons the legal title to the land in controversy, actual as well as apparent, was in Ellen Smith. Defendants in error rely upon two deeds executed by Ellen Smith and filed for record as sufficient to give to Alfred Simonds the apparent record title to the land. The first of these is a deed made by Ellen Smith and her daughter; Louisa Moseley, on May 26, 1904, conveying to G. B. Turner the west 100 acres or the west one-half of the 200 acre tract. This deed in the metes and bounds of the tract conveyed describes it as "commencing at the N. W. corner of the tract of land of 100 acres heretofore sold to Alf Simon by ourselves" and describes the south line as extending to "said Alf Simons' S. W. corner" and its east line as running "N. with said Simons' W. line." The

deed invests G. B. Turner with the title to the land that it purports to convey, the west 100 acres. It does not convey or purport to convey the land in controversy, which is the east 100 acres, to Turner or to Alf Simon or to any other person. It merely contains a recital, part of the description of the tract conveyed, to the effect that the grantors have sold to Alf Simon a tract of 100 acres immediately east of the land conveyed. It is apparently not a conveyance of the east 100 acres from Ellen Smith to Alfred Simonds. The recital in this deed that the grantors Ellen Smith and Louisa Moseley have conveyed to Alf Simon a tract of 100 acres lying immediately east of the tract conveyed is of course binding upon the grantors and their heirs and operates by way of estoppel against them and in favor of Alf Simon and those claiming under him, and in a contest between Alf Simon, or those claiming under him, and Ellen Smith and Louisa Moseley, or their heirs, over the title to the east 100 acres (if it is assumed that the description is sufficient) the estoppel arising from such recital might take the place of a deed or form in effect a muniment of title. Havard v. Smith, 13 S. W. (2d) 743; Hardy v. De Leon, 5 Texas 211, 244. But such recital cannot be used to affect the title of plaintiffs in error or create an apparent record title against them, for the reason that they are not parties to, and are in no way connected with, the deed containing the recital. Houston v. Blythe, 60 Texas 506; Roberts v. Waddell, 94 S. W. (2d) 211; Bartell v. Kelsey, 59 S. W. 631; Schriver v. Taylor, 143 S. W. 231 (application for writ of error refused). Associate Justice Wheeler in Hardy v. De Leon, supra, quoted as the general rule the words of Justice Story that "A recital of one deed in another binds the parties and those who claim under them by matters subsequent." Plaintiffs in error claim under Ellen Smith, but not under the deed executed May 26, 1904, containing the recital and not under her "by matters subsequent." Their claim is under the deed made by Ellen Smith to Alfred and Margaret Sammons on September 18, 1903. Since they are strangers to the later deed, its recitals, under the authorities above cited, do not constitute as against them evidence that Ellen Smith conveyed the east 100 acres to Alfred Simonds or evidence of an apparent record title to the land in controversy in Alfred Simonds.

■ The other instrument relied upon by defendants in error is a quit claim deed and therefore will not sustain the defense of innocent purchaser. Cook v. Smith, 107 Texas 119, 174 S. W. 1094, 3 A. L. R. 940; Richardson v. Levi, 67 Texas 364, 3 S. W.

444; Threadgill v. Bickerstaff, 87 Texas 520, 29 S. W. 757; Hunter v. Eastham, 95 Texas 648, 69 S. W. 66; Houston Oil Co. v. Niles, (Com. App.) 255 S. W. 605; Miller v. Pullman, 72 S. W. (2d) 379, (application for writ of error refused); Hale v. Hale, 93 S. W. (2d) 535; 43 Tex. Jur., pp. 624-625, Sec. 370; Note 3 A. L. R. pp. 945 and following. This is a deed executed June 1, 1916, after the death of Ellen Smith, by two of her three children, selling, releasing and quitclaiming to W. M. Weathersby "all our right, title and interest" in and to the tract of land in controversy, describing it by metes and bounds. It contains the recital of a consideration of one dollar "and the fact that the warranty deed given by Ellen Smith, who is now deceased, to Alf Simonds was lost without ever being put of record." The granting and habendum clauses are in substantially the same language as the granting and habendum clauses of the instruments held in the cases above cited to be quitclaim deeds. Under the test prescribed in Cook v. Smith, supra, the instrument is clearly a quitclaim deed because considered in its entirety it discloses a purpose to convey no more than the title of the grantors.

Having reached the conclusion that defendants in error failed to prove that they acquired the apparent record title to the undivided one-half interest in the land in controversy that was conveyed by Ellen Smith to Margaret Simonds, we need not determine whether the claim of innocent purchaser was defeated by the deed made by T. B. Weathersby to T. P. Campbell April 4, 1916, and duly recorded.

The contention that plaintiffs in error are estopped by the recitals in the deed from Ellen Smith to G. B. Turner and the recitals in the deed from two of her children to W. M. Weathersby from asserting their title to the land in controversy is answered by the authorities cited above in the consideration of the claim of innocent purchaser. As held in those cases, plaintiffs in error are not estopped by such recitals because they were in no way responsible for them or connected with them. Another reason for the same conclusion is that a grantor is not permitted by declarations or statements made by him after he has conveyed land to defeat or disparage the title that he has conveyed. Barnard v. Blum, 69 Texas 608, 613, 7 S. W. 98; 21 C. J. p. 1067, Sec. 26.

■ Delay of plaintiffs in error in filing for record the deed under which they claim and their failure to assert promptly their title after defendants in error and those under whom they claim took possession of the land are urged as grounds

for estoppel. Delay in recording a deed or failure to assert ownership promptly will not divest one of title. The statutes of registration and limitation are intended to give protection against such negligence or indifference on the part of the land owner. In the language of Associate Justice Looney in Holland v. Blanchard, 262 S. W. 97, 101, "Silence or failure to assert title to land while it is being adversely claimed, conveyed, or occupied, is not of itself sufficient to create an estoppel."

The deed from Ellen Smith to Alfred and Margaret Sammons in describing the land conveyed gives the metes and bounds of the 200 acre tract that was conveyed by Markham to Jack and Ellen Smith and then contains the following: "save and except 100 acres heretofore deeded to Louisa Moseley by her mother, Ellen Smith, and the said 100 acres herein conveyed is off the east end of the above described tract or parcel of land and the 100 acres conveyed to Louisa Moseley is off the west end of the above described tract, and which 100 acres has been conveyed by said Louisa Moseley has been surveyed and described by metes and bounds and to said deed of conveyance reference is hereby made for a better description." The argument is made by defendants in error that plaintiffs in error failed to identify the land conveyed by the deed to Alfred and Margaret Sammons because they did not make proof, by introducing the deed to Louisa Moseley or otherwise, of the metes and bounds of the 100 acres conveyed to Louisa Moseley. The position would be well taken if the deed to Alfred and Margaret Sammons had contained no other description of the land conveyed than that of the 200 acre tract with the added words "save and except 100 acres heretofore deeded to Louisa Moseley by her mother, Ellen Smith." But it is made clear by the further language of the deed above quoted that the grantor intends to convey to Alfred and Margaret Sammons 100 acres off the east end of the 200 acre tract and that the tract which she has conveyed to Louisa Moseley is 100 acres off the west end of the 200 acre tract. Thus the deed contains a sufficiently definite description of the land intended to be conveyed, namely, 100 acres off the east end of the 200 acre tract describd by metes and bounds, without resort to the metes and bounds of the 100 acres off the west end of the tract as contained in the deed to Louisa Moseley. Pruett v. Robison, 108 Texas 283, 284, 192 S. W. 537; Woods v. Selby Oil & Gas Co., 12 S. W. (2d) 994; Id. 2 S. W. (2d) 895; Long v. Martin, 234 S. W. 91, 97; Clayborn v. Gambill, 87 S. W. (2d) 508 (application

for writ of error refused) ; 14 Tex. Jur. p. 1032-1033, Sec. 238. It is not to be assumed that the particular description in the deed to Louisa Moseley contradicts or is repugnant to the general description of that tract as 100 acres off the west end of the 200 acres.

All of the assignments in the application for writ of error and all of the propositions in the briefs of defendants in error have been considered. Those not discussed either are clearly without merit or present questions that will not be important or controlling in another trial.

The judgments of the Court of Civil Appeals and the district court are reversed and the cause is remanded to the district court.

Opinion adopted by the Supreme Court March 16, 1938.

Rehearing overruled April 27, 1938.

### ON SECOND MOTIONS FOR REHEARING.

The Court permitted plaintiffs in error to file a second motion for rehearing and, because of such action, granted like permission to defendants in error.

Plaintiffs in error in their said motion complain of only that part of the decision by which it was held that the evidence as a whole conclusively proves that Percy McGeorge in the years 1922 and 1923 was a nonresident of Texas. They contend that there is in the record evidence which "proves prima facie" that McGeorge was during those years a resident of Texas and that therefore an issue of fact was made. The evidence relied upon consists of several deeds to Percy McGeorge in which he is described as "of Dallas, Texas" or "of the County of Dallas, State of Texas," together with the fact that McGeorge during those years owned a furnished residence in the City of Dallas.

The record contains also the following undisputed evidence: Percy McGeorge and his father, William McGeorge, Jr., residents of Pennsylvania, were engaged with another brother in the farm loan business under the firm name of William McGeorge, Jr., & Sons, with their principal office in Philadelphia. They established an office in Dallas, the exact time not being shown. In connection with that business Percy McGeorge made short visits to Texas until 1906 and from 1906 to 1921 he usually spent several months in Texas each year. McGeorge purchased a house in Dallas and used it as a place of residence

while he was staying there. He continued to own the house to the time of the trial. About the first of June, 1921, Percy McGeorge left Texas, going back to Pennsylvania, and thereafter remained out of Texas, except for occasional visits to Texas thereafter made. He was in Texas once for a few days in 1926. George K. Merriweather, who was McGeorge's assistant in the Dallas office when McGeorge returned to Pennsylvania in 1921, remained in Dallas in charge of the office until 1928, when the office was closed. A short time after McGeorge returned to Pennsylvania in 1921 Merriweather moved into the house in Dallas owned by McGeorge.

McGeorge testified that he did not sell the house in Dallas and did not move the furniture when he left Texas in 1921 because he expected to return in the latter part of that year or in the next year to superintend the making of further loans. His father died August 14, 1922, and he and his brother continued in business under the same firm name for sometime thereafter.

McGeorge testified that when he left Texas in 1921 he intended to return whenever it was necessary to do so to look after the making of additional loans, but that he never intended to return to Texas to live there. He testified further that he never regarded the house in Dallas as a residence, but merely as a place where he or Mrs. McGeorge could stay during visits to Texas, that since January 1, 1922, he had at all times actually lived and maintained his residence in the State of Pennsylvania and that he had always maintained his residence in the State of Pennsylvania and had regarded himself when in Texas as a visitor for the purpose of looking after the loan business. Merriweather testified that McGeorge left Dallas about the first of June, 1921, and did not return until the summer of 1926, when he came to Dallas and stayed three or four days and that from that time until September, 1928, McGeorge never again returned to Dallas. The record does not show that McGeorge was in any way engaged in business in Texas after 1928, when the Texas office was closed, but it appears that he continued to reside in Pennsylvania. He resided there when his deposition was taken in this case in 1934 or the early part of 1935.

▮ In our opinion it conclusively appears from the evidence above set out that McGeorge was not a resident of Dallas or of Texas after he left Dallas and returned to Pennsylvania in June, 1921. It is true that most of the foregoing evidence is taken from the testimony of McGeorge, which was given by deposition taken by plaintiffs in error. McGeorge, named as one

of the defendants in this case, filed a disclaimer setting out the fact that he had theretofore conveyed the land to Mabel Shoemaker. At the time the suit was filed and at the time when McGeorge's deposition was taken, he had by deed to Mabel Shoemaker and by oil lease to Cranfill and Germany divested himself of whatever title he had in the land in controversy. Plaintiffs in error contend that, notwithstanding McGeorge's disclaimer, he is an interested witness because his disclaimer is not an unqualified confession of plaintiffs in error's cause of action, which is a suit for rents and damages as well as for title. We think, however, that even if McGeorge is to be classed as an interested witness, conclusive effect should be given to his testimony, because it is clear, positive and unequivocal on the point in issue, because plaintiffs in error had opportunity to contradict or discredit his testimony, it having been taken by them by deposition in advance of the trial, because the testimony is wholly uncontradicted except by the slightest of evidence, the statements in the deeds that McGeorge is of Dallas or of Dallas County, and because the testimony is corroborated by the testimony of Merriweather, a disinterested witness, on the most important fact, McGeorge's departure from Texas and return to Pennsylvania in June 1921, and his continued absence thereafter from Texas save for one visit of a few days in 1926. Great Southern Life Insurance Company v. Dorrough, 100 S. W. (2d) 772, 775-776; Trinity Gravel Co. v. Cranke (Com. App.) 282 S. W. 798, 801; American Surety Co. v. Whitehead (Com. App.) 45 S. W. (2d) 958, 961; Felts v. Bell County, 103 Texas 616, 132 S. W. 123; Golden v. First State Bank of Bomarton, 38 S. W. (2d) 628, 629; City of San Antonio v. E. H. Rollins & Son, 127 S. W. 1166, 1173-1174. The testimony of Percy McGeorge with respect to his residence in Pennsylvania, his absence from Texas and the maintenance of the principal office of the partnership in Philadelphia is further corroborated by correspondence that passed between Merriweather and the Philadelphia office, a part of which correspondence was between Merriweather in Dallas and Percy McGeorge in Philadelphia.

We do not believe that the words "of Dallas" and "of Dallas County" appearing in the deeds to Percy McGeorge rise to the dignity of recitals of fact as to the place of his residence. They are merely descriptive phrases added to the name of the grantee as a further means of identification. It is true that Article 1292 sets out a form of deed, providing that the form, or the same in substance, shall be sufficient as a conveyance of the fee simple of real estate, and that the form describes the grantee

as of a town or county and state. Of course such added matter of description is not essential to the validity of the deed and an error in it does not defeat the conveyance. Ballard v. Carmichael, 83 Texas 355, 368, 13 S. W. 734.

McGeorge's acceptance of deeds describing him as of Dallas or of Dallas County would not be an admission by him that he was in fact a resident of Dallas or Dallas County when the deeds were accepted. He had theretofore during several months of each year been personally present in Dallas engaged in business. It was natural that persons executing instruments to him affecting Texas land should refer to him as of Dallas or Dallas County. If he had believed that the words were intended to describe him as a resident of Texas he would have known that the error would not affect the validity of the deeds and that it was not of sufficient importance to require correction.

Plaintiffs in error cite Peurifoy v. Wisebusch, 132 Texas 36, 117 S. W. (2d) 773, in which it was held that the positive recital, in a release of lien executed by the owner of two notes secured by the lien, that the notes had been paid raised an issue of fact as to payment of the notes. Such positive recital of fact, peculiarly within the knowledge of the owner of the notes and of primary importance to him, contained in a formal release of lien executed by him because, according to its terms, the notes had been paid to him, and to evidence their payment, is clearly much more convincing evidence and of much greater probative value than are the descriptive phrases "of Dallas" or "of Dallas County" contained in the deeds executed by other persons to McGeorge.

We are thoroughly convinced, after again reviewing the evidence and carefully considering the arguments made and authorities cited by plaintiffs in error, that the evidence as a whole conclusively proves that Percy McGeorge in the years 1922 and 1923 was a nonresident of Texas. We do not believe that any impartial, reasonable mind, after examination of all of the evidence, including that relied upon by plaintiffs in error could reach any other conclusion.

It may be conceded, as contended by plaintiffs in error, that the deeds describing McGeorge as a resident of Dallas or Dallas County and the evidence that McGeorge continued to own a furnished house in Dallas, in the absence of other evidence, would have proven prima facie that McGeorge resided in Texas. Stated in another way, a presumption of fact might have arisen from the evidence relied upon by plaintiffs in error. But prima facie evidence and presumptions of fact disappear

when the true facts are conclusively shown by other evidence. "Prima facie evidence is merely that which suffices for the proof of a particular fact until contradicted and overcome by other evidence." Dodson v. Watson, 110 Texas 355, 358, 220 S. W. 771. Evidence which, uncontradicted and unexplained, would be prima facie evidence of a fact becomes insufficient to raise an issue of fact when the other facts in evidence conclusively prove that the fact sought to be shown by the prima facie evidence or presumption of fact does not exist. Geffert v. Yorktown Independent School District (Com. App.) 290 S. W. 1083, 1085; American Surety Company of New York v. Cross, 80 S. W. (2d) 470, 473; Moore v. Wooten (Com. App.) 280 S. W. 742, 747; Martinez v. Gutierrez (Com. App.) 66 S. W. (2d) 678, 684; Largen v. State, 76 Texas 323, 328, 13 S. W. 161; McCutchen v. Purinton, 84 Texas 603, 604, 19 S. W. 710; Langford v. El Paso Banking Company, 1 S. W. (2d) 476, 479; Crabb v. Freight Agency, 123 S. W. (2d) 752, 755.

The cause having been remanded for trial to the district court, plaintiffs in error, of course, will have the opportunity to introduce other evidence bearing upon the question discussed herein which might warrant a different conclusion from that expressed in this opinion.

The second motion for rehearing filed by defendants in error has been carefully considered. Both of the said second motions for rehearing are overruled.

Opinion adopted by the Supreme Court February 7, 1940.