KAMP et al. v. HARGIS BLDG. CO. et al.

No. 12235.

Court of Civil Appeals of Texas. Galveston.

March 1, 1951.

Rehearing Denied March 29, 1951.

278

Stovall, O'Bryan & Stovall, T. J. Stovall, Fulbright, Crooker, Freeman & Bates and Walter J. Morrison, all of Houston, for appellants.

Randolph & Butler, William B. Butler and Glenn M. Green, all of Houston, for Hargis Bldg. Co.

CODY, Justice.

This was a suit by the Hargis Building Company to rescind the purchase by it from J. Allen Saint and wife, Hazel Wisch Saint, of a certain group of lots located in the City of Houston; and for the cancellation of the contract of sale and deed, and of the other papers connected with the transaction, and for the recovery of the money that plaintiff had paid to said defendants thereunder. The grounds alleged were that defendants, through their real estate agents making the sale, represented that the property in question was bounded by Ideal Street over which there was access thereto,

but that some time after plaintiff had purchased said property in reliance thereon, it discovered that the representation was not true. And plaintiff alleged that there was either a false representation that Ideal Street was the boundary of the property or that there was a mutual mistake as to the location of said boundary, giving access thereto.

The defendants answered with a general denial, and specially answered, among other things, that plaintiff bought the property, and the property was described in the contract of sale, deed, and other instruments connected with the sale, by lots and blocks, and with reference to the map which was duly recorded, and which showed that it was bounded on the east by acreage,—i. e., not by any street giving access thereto. And the aforesaid defendants pled actual, implied or constructive knowledge on the part of plaintiff of the fact that there was no access to the property by a street; and pled estoppel and waiver with respect to said representation if any such were made. And said defendants sought to enforce payment of the unpaid balance of the purchase price.

In addition, said defendants brought a third party action against the real estate agents who had represented them in making the sale, alleging in substance that said real estate agents had a listing contract from defendants which had the effect of allowing them twenty per cent instead of the usual five per cent commission, and said defendants sought to recover the brokerage which had been received by the third party defendants if the contract was rescinded, etc.

After the suit was filed, inclusive of the third party action, and before trial, defendant J. Allen Saint died; and Mrs. Saint was adjudged non compos mentis. And in due time an administrator of the Estate of J. Allen Saint and a guardian of the Estate of Mrs. Saint were respectively appointed, who were regularly made substituted parties, and the suit proceeded in the names of said substituted defendants.

Thereafter, the plaintiff sought to have the third party suit severed from the main suit, but the court ruled that the third party defendants were proper parties.

At the conclusion of the trial, all parties moved for instructed verdicts. The court refused the motion of the main defendants, but granted the motions of the plaintiff, and of the third party defendants, respectively, and judgment was accordingly entered for plaintiff against the main defendants, cancelling the contract of sale, etc., and granting recovery of the portion of the purchase price which had been paid. And the court denied the main defendants any recovery against the third party defendants. The main defendants have appealed, and will hereafter be called defendants. The plaintiff in the main suit will here be referred to as in the trial court. When referred to in their capacities as parties to this proceeding, the third party defendants will continue to be so referred to.

The defendants have predicated their appeal upon five points, to the effect:

1. The court erred in directing verdicts for plaintiff and third party defendants, because all the testimony was by interested witnesses, and their testimony raised the issue of their credibility for the jury.

2. The court erred in admitting testimony of witnesses with respect to transactions and conversations which they had with the deceased and with the non compos mentis, when not called by the opposite party, over the opposite party's objection contrary to the statute.

3. "The Court erred, as a matter of law, in not holding that where property is conveyed by deed accurately describing the property actually owned by sellers, and deed on its face makes map of a subdivision in which land lies a part thereof by reference to said map, recorded in Deed Records of County in which land is located, the purchaser is bound by all matters reflected in deed and map, where there is no evidence that sellers prevented purchaser from advising itself fully as to what deed map disclosed in regard to description, and this especially where purchaser had own attorney draw deed, note and deed of trust covering property, and all such papers accurately described property."

4. "The Court erred as a matter of law in overruling the defendant's Motion for

Instructed Verdict at the close of the evidence because there was no evidence of any probative force in the case that would support a recision on the ground of a mutual mistake, since any unilateral mistake made in the listing contract was corrected in the earnest money contract which correctly described the land in suit, as did the deed, deed of trust and the note, all drawn by plaintiff's attorney, the defendants not having benefit of counsel."

5. "The Court erred as a matter of law in overruling the defendant's Motion for Instructed Verdict at the close of the evidence because it was clearly shown from all the evidence that as a matter of law plaintiff did not, and could not, under all the facts and circumstances of the case, have relied on any misrepresentation and been misled."

Before taking up defendants' points, we note that evidence was admitted by the court to the following effect:

That the defendants wished to sell the property here involved, and listed it for sale with Mr. and Mrs. Henry, under a letter from J. A. Saint, addressed to aforesaid Mrs. H. C. Henry, Jr., dated March 22, 1946, reading:

"I have for sale a triangular piece of property located in the O. P. Kelton Survey, lying East of Morningside Addition and bounded on the west by Little White Oak Bayou.

"I am offering this property at a price of $5,000.00 net to me and I am giving you exclusive sales right to same for a period of ten days from date of this letter."

That prior to the writing of this letter Mr. Saint had advised Mrs. Henry that he had the property for sale and would like for her and her husband to make the commission. Mr. and Mrs. Henry, with the approval of defendants, associated Mr. Swilley with them in selling the property. And it was Mr. Swilley who required the written exclusive listing of the property for sale for a period of ten days. The evidence of plaintiff and third party defendants was to the effect that Mr. Saint had given the Henrys a rough plat of the property which showed it to be acreage, having the bayou

as its west boundary, and Ideal Street as its east boundary. That it was the idea of the defendants that the property consisted of about five acres. When Mr. Swilley went over it with the Henrys, and when shown the supposed boundaries, he stated that it was substantially more than five acres. That Mr. Swilley, as soon as the letter of exclusive listing was received, set up signs along the west side of Ideal Street to the effect that the property was for sale, and giving his telephone number.

That on prior occasions Mr. Swilley had done business with plaintiff, which was a corporation that built homes for sale, and which, in connection with its business, sometimes put on subdivisions, building thereon for sale houses for residence. That he drove Mr. Hargis and Mr. Westbrook, who were officers of plaintiff corporation, out to look at the property, and told them that it was acreage property, and pointed out its boundaries (as he understood them to be), including the fact that the property was bounded on its east by Ideal Street. We here interpolate that, for practical purposes, the bayou cut off access to the property from the west; and that if there was to be access to the property, it had to be by Ideal Street.

Plaintiff, who wanted to buy the property to develop for homesites to sell, agreed to buy the property for $6,000.00, and it was the evidence of plaintiff and third party defendants that Mr. Swilley, preparatory to drawing the earnest money contract, went to Mr. Saint and requested an accurate or "legal" description of the property, and that Mr. Saint told him that he believed that he could find the deed which conveyed the property to him, and that he looked in his desk and after a search found such deed, and that Mr. Swilley got the lots and blocks description from said deed, which description showed that the property was a part of Morningside Addition. That said description was placed in the earnest money contract by Mr. Swilley, and was used in all other papers connected with the sale. That when Mr. Swilley submitted the earnest money contract to Mr. Westbrook, who was the officer of plaintiff corporation who handled the purchase for

plaintiff, he demurred at the description, on the ground that he understood the property was acreage, but that Mr. Swilley hastened to explain that would make no difference, that it was the same property as had been pointed out to Mr. Westbrook and to Mr. Hargis—which was bounded on the east by Ideal Street. We here interpolate to show that defendants' evidence was to the effect that Mrs. Saint inherited the property, at which time it was acreage, and the plat of Morningside Addition shows that defendants joined in making the dedication which subjected the property to its lot and block status. The deed which Mr. Swilley testified was shown him by Mr. Saint was not produced by plaintiff or third party defendants, and was not reflected by the abstract.

The evidence further showed that, pursuant to the terms of the earnest money receipt, the abstract of title was turned over to plaintiff; that the abstract showed the plat of Morningside Addition, and that it had been dedicated in 1938; that it appeared from said plat that the property here involved was bounded on the east by acreage,—from which it could only be inferred if the map was correct that, at the date of the plat to Morningside Addition, it was not bounded on the east by Ideal Street. The evidence further showed that plaintiff obtained a title guaranty which described the property as being lots in blocks in Morningside Addition; also that plaintiff employed the attorney who drafted the deed, deed of trust, and vendor's lien notes; and that the description used therein was the lots-and-blocks description according to the map or plat of Morningside Addition.

The testimony of Mr. Hargis, president of plaintiff-corporation, shows that after some months had elapsed, and after most of the consideration had been paid, he took occasion to look at the abstract, and saw for the first time that, according to the plat, the property which plaintiff had purchased was bounded on the east by acreage. The plaintiff therefore had the property surveyed. It was established by such survey that the property was not bounded on the east by Ideal Street, but by acreage which was some three hundred feet wide

and some six hundred feet long, and said acreage strip was bounded on the east by Ideal Street, and on the west, in part, by the property which had been deeded to plaintiff by the Saints. This acreage strip, and no part of it was for sale.

It was undisputed that, without access to the property from Ideal Street, it was worth but a fraction of the purchase price which plaintiff had paid therefor. It was undisputed that the real estate agents, representing the Saints, had represented to plaintiff's officers that the property was bounded on the east by Ideal Street. The officers of plaintiff, aforesaid, testified that they believed said representation and relied on it, and would not have purchased the property except for such reliance.

By force of Texas Rules of Civil Procedure, rule 184, the common law of England in its application to evidence is made the law of this State, with certain exceptions. One of these exceptions is embodied in R.C.S. Art. 3714, by which the common law rule, which provided that a pecuniary interest of a witness in the issue tried rendered his evidence incompetent, was revoked. Whatever the rule with respect to witnesses having a pecuniary interest may be elsewhere, the rule in Texas Courts is: "As to the testimony of interested witnesses, the general rule is that, while the jury has no right arbitrarily to disregard the positive testimony of unimpeached and uncontradicted witnesses, the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury. Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict." (Opinion adopted by the Supreme Court.) Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332, at 333 and 334. We will not here undertake to note the exceptions to this general rule. See McGuire v. City of Dallas, 141 Tex. 170, 180, 170 S.W.2d 722, 723. But we think that the ultimate test of whether the court must direct a verdict where founded in part upon the testimony of a witness with a pe-

cuniary interest in the issue tried may be thus phrased: If any impartial, reasonable mind, after an examination of all of the evidence in the case, can reach but one conclusion, then the court must instruct a verdict, even though it may be based in part upon the testimony of an interested witness. See Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 351, 114 S.W.2d 226, 136 S.W.2d 207.

Here, the testimony of the witnesses Westbrook and Hargis, officers of plaintiff, illustrates what we have stated to be the ultimate test. They testified that Swilley represented that the property was bounded on the east by Ideal Street, and that access to the property could be had thereby; that they believed such representation, and, except for reliance thereon, would not have purchased the property.

Here, the evidence as a whole compels the acceptance of such evidence as true. The Corporation was engaged in building homes for sale. The corporation bought the property to develop for home sites, agreeing to pay therefor the sum of $6,000.00. Without access to the property by Ideal Street, the property was obviously not fit for the purpose for which it was purchased. Without ingress and egress, it could not be developed for home sites. And the cost of gaining access thereto from across the bayou was prohibitive. No impartial, reasonable mind can doubt that plaintiff agreed to pay $6000 for the property only in reliance upon the representation aforesaid. Whether plaintiff had knowledge of facts which put it on inquiry is another matter. We overrule defendant's first point.

■ Art. 3716 is an exception to Art. 3714, and is a vestigial remainder of the aforesaid common law rule that a pecuniary interest renders a witness incompetent to testify. It reads: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives".

The foregoing article is a vestigial remainder of the common law rule aforesaid, that a pecuniary interest renders the testimony of a witness incompetent. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291. And it is the settled law of this State that the language of the article will be strictly construed so as not to extend it beyond its plain meaning. International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, 1043. The history and meaning of the article is sufficiently set forth in the opinion just cited, and in cases there referred to, such as Spencer v. Schell, 107 Tex. 44, 173 S.W. 867, opinion by Chief Justice Phillips; and Leahy v. Timon, 110 Tex. 73, 215 S.W. 951, opinion by Judge Greenwood.

■ It is clear that, in the third party action, the third party defendants were incompetent to testify as to transactions and conversations between themselves and the defendants. They were called to testify, however, by plaintiff with respect to transactions and conversations between themselves and the deceased defendant and the non compos mentis defendant. And their testimony, which was clearly inadmissible in the third party action, was admitted over the objection of defendants. This was no doubt done upon the ground either that such testimony constituted admissions against interest, or that they were called to testify by the opposite party.

■ If the testimony of the third party defendants was merely inadmissible in the third party action, it might possibly be held that there was no error in its admission in the main suit, and that defendants should have framed their objections so as to cause the evidence to be admitted only in the main suit. However, under the statute, the testimony was clearly incompetent in the third party action, and the third party defendants were necessary parties in the third party action, and proper parties in the main suit. Plaintiff sought a severance, but the court refused to sever, and no exception was reserved to such action. We know of no authority which holds that

a severance would be ordered in order to permit a party to circumvent the statute. But our reason for holding that the evidence of the conversations of the third party defendants with the defendants was incompetent in the main action goes deeper. Such testimony is inhibited by the article. The purpose of the article was to render incompetent testimony as to conversations and transactions with the deceased in such a suit as this, which he might deny, if alive.

■ We sustain defendants' second point. But the admission of such evidence did not constitute reversible error with respect to the court's action in directing a verdict for plaintiff. This, because plaintiff had no direct or personal contact with either of defendants, at least until after it was discovered by plaintiff that Ideal Street was not the east boundary of the property. The statute did not inhibit evidence of what the real estate agents said and did in effecting the sale. The Saints could not have testified that such conversations and transactions which took place between the real estate agents and plaintiffs did not happen. And it is fundamental that any representation made by an agent, if relied upon, etc., is ground for rescission of a contract for sale of realty. Of course by sustaining defendants' second point, we are required to reverse so much of the court's judgment as denied defendants any recovery against the third party defendants, based on the directed verdict.

■ With respect to defendants' third point, plaintiff complains, and not without reason, that it fails to identify the ruling of the court complained of. However, a court of civil appeals may not disregard a point upon which an appeal is based merely because the point is ambiguously stated. The remedy is to require re-briefing. But re-briefing is not required here. For here, the court instructed a verdict for plaintiff, and defendants complain of this action on the one hand, and on the other hand the action of the court in refusing to instruct a verdict for defendants in the main suit. If defendants' point was intended to be addressed to the action of the court in refusing to direct a verdict for defendants, and

that complaint should be well founded, the action of the court in directing a verdict against defendants would not be reached.

■ Since defendants seem to labor under the impression that plaintiff sought in this action to have the sale rescinded because of the original representation that the property was "raw acreage" there is some basis for supposing that the point complains of the court's failure to direct a verdict for defendant. Certainly as a matter of law, where the grantee in a deed takes a conveyance which describes the property as lots and blocks, he could not be allowed to rely on a representation that he was receiving "raw" or unplatted acreage. But it clearly appears from plaintiff's petition that it did not pitch its suit for rescission on so unsupportable a ground. And since such initial representation is not put in issue by plaintiff as a ground for rescission, it is clear that defendants' flourishes that plaintiff, as a matter of law, was charged with knowledge by the papers in the transaction that it was not getting unplatted acreage, are immaterial, and we construe the point as relating to only the issue on misrepresentation made by plaintiff's petition, namely the representation that Ideal Street was the east boundary, and furnished access thereto.

It was plaintiff's evidence that it was purchasing the property to develop for home sites. We cannot say that the evidence was not sufficient to raise an issue of whether or not a reasonably prudent man, who was buying lots and blocks to develop for home sites, was not put on inquiry with respect to all facts clearly shown by the plat. The size of the lots and blocks, their suitability for home sites, their accessibility to the other lots and blocks, to the streets in the addition, the restrictions placed on the lots, the easements, were all shown by the map of the addition, and the description showed that plaintiff was only acquiring a portion of an addition.

The issue was raised whether any reasonable man who looked at the map, and saw—what it clearly disclosed—that the property was not bounded on the east by Ideal Street, should have inquired whether,

since the plat was dedicated in 1938, Ideal Street was extended so as to give access to the lots. The evidence here clearly shows that when Mr. Hargis first looked at the map, he at once questioned the truth of the representation, and caused a survey to be made. It seems to us that a plat in a purchaser's chain of title raises the issue of fact whether or not a reasonably prudent man would have been put on inquiry as to the truth of a representation as to the location of a street which the map, if a true representation itself, refutes.

This conclusion, in view of the ambiguity of defendants' third point, is tentative, and plaintiff is allowed and invited, as requested by it, to further answer, which answer will be by way of motion for rehearing.

We, subject to plaintiff's reserved right to answer the point further, sustain defendants' third point, and rule that the court erred in directing a verdict against defendants.

We have considered defendants' points four and five and find them without merit.

The judgment of the court below is reversed and the cause remanded.

### On Motion for Rehearing

It is immaterial in this case whether, if a reasonably prudent man looked at the plat of Morningside Addition, he would have been put on inquiry as to whether it was bounded on the east by Ideal Street.

This, because the evidence affirmatively shows that no one who represented plaintiff, and knew of the representation that Ideal Street was its east boundary line, and of its materiality, ever saw the plat until Mr. Hargis saw it, under the circumstances referred to in our original opinion.

Even had the title guaranty company examined the title, which it presumably did, it would not have gained therefrom any knowledge of the false representation. And the attorney, who was employed to draft the papers in the transaction, could not have learned from the plat of the representation that Ideal Street was the east boundary line of the property. In a word, the plaintiff was charged with the knowledge, as a matter of law, of matters which the plat, as dedicated, imposed upon the property which was conveyed to plaintiff, but not what was beyond the dedicated property.

 The plaintiff had the right to believe that defendants knew the location of their property, and its boundaries, and had the right to take the agents' word that Ideal Street was the east boundary line. And, as indicated, in our original opinion, the plaintiff did so. Here the rule applied in such cases as Stevenson v. Cauble, 55 Tex.Civ.App. 75, 118 S.W. 811, 812, applies, " * * * when one by false representations of facts, although innocently made, induces another to enter into a contract, and such misrepresentations are made the basis for relief sought by the other, it is no defense to the prayer for such relief to show that the person deceived had the opportunity and means of correctly informing himself in the premises, unless it be further shown that he took some steps in making an independent investigation of the facts."

 The corporate appellee's motion for rehearing is granted, and the judgment insofar as was rendered by the trial court in its favor is now affirmed. However, the judgment of this court remanding the case as to the third party defendants remains unchanged.

Motion for rehearing granted in part. Former judgment set aside.