**O. C. GIPSON, Appellant,**

**v.**

**AETNA INSURANCE COMPANY, Appellee.**

No. 3832.

Court of Civil Appeals of Texas.

Eastland.

Nov. 29, 1963.

**312** ■ ▬▬▬▬▬▬▬▬

Bradbury, Tippen, Brown & Clement, Abilene, for appellant.

Roger L. Glandon, Walter S. Pope, Jr., Abilene, for appellee.

COLLINGS, Justice.

O. C. Gipson brought suit against Aetna Insurance Company for recovery on an insurance policy which provided certain benefits for disability "resulting directly and independently of all other causes from accidental bodily injury sustained during the term of this policy." The case was tried before a jury and at the close of the testimony the defendant insurance company made a motion for an instructed verdict. The court took the motion under advisement and submitted special issues to the jury. The jury was unable to agree upon an answer to special issue number 3 which inquired whether the disability complained of resulted directly from the injury in question and independently of all other causes. The court then reconsidered and granted the defendant's motion for an instructed verdict and entered judgment in favor of the defendant. O. C. Gipson has appealed.

It is contended in appellant's first point that the court erred in granting the insurance company's motion for an instructed verdict because there was "conflicting evidence upon material fact questions requiring jury decision."

The record shows that the policy of insurance sued upon was dated May 1, 1962, and issued on that date or on May 3, 1962; that it insured appellant "Against loss resulting directly and independently of all other causes from accidental bodily injuries sustained during the term of this policy." The evidence shows, as testified to by appellant, that on May 22, 1962, while he was loading two spools of wire on a welding machine that he sustained an injury to his left arm, which is the injury here in question. The jury found that Gipson did sustain the alleged accidental bodily injury, and that Gipson became wholly and continuously disabled as a result of such accident, but, as already noted, the jury was unable to agree upon an answer to the question whether Gipson's said disability resulted directly from the injury in question and independently of all other causes. Appellant contends that there was evidence in support of an affirmative finding on the issue and that the court therefore erred in granting appellee's motion for an instructed verdict.

The evidence indicates that appellant has had three injuries to his left arm. In June or July, 1961, he first fractured his left arm at his home. He was treated by Dr. Willis J. Bray, was hospitalized and was off duty about four months. In November of 1961, he again broke that arm when he fell off a tractor. He was again treated by Dr. Bray, who advised a bone graft but appellant refused to permit the operation and a cast was placed on his arm. Thereafter, appellant did no work until about March 20, 1962, at which time the doctor released him to do light work and he began working as a welder. Appellant testified that the doctor told him "to go to work and do light duty"; that the doctor did not release him for full duty but told him to "take care of it" and to "favor it". Appellant stated that he was not under medical treatment during this period but was going back to the doctor about once a month for a check up; that he was particularly instructed by the doctor to see him if any complications set in; that he went to see Dr. Bray for a check up on April 24, 1962,

and had another x-ray; that the doctor talked to him about the x-ray but he didn't remember whether the doctor told him that his arm was not doing well at the time. The evidence indicates that when appellant started to work on the welding job he did all of the work connected with that job except loading the spools of wire on the welding machine; that when the wire was loaded he got other employees at the plant to help.

Appellant took out the policy of insurance around the first of May, 1962. He testified that at that time he thought his arm was healed; that he thought this because he was working. His application for the policy of insurance sued upon stated that he had recovered from the effects of his fractured left arm. He stated that Dr. Bray had wanted him to have a bone graft but he didn't let the doctor do it; that he wanted to wait and see if it would get well without the operation; and that it did grow back and that he was working. Appellant also testified that at the time he applied for the insurance he did not know he was going into the hospital to have the arm operated on. He stated that on the morning of May 22, 1962, the day of the accidental injury in question, his arm was not giving him any trouble; that he lifted two spools of wire, each weighing 60 pounds, and that when he lifted the second one and placed it on the machine he felt a sharp pain; that he went to see Dr. Bray who examined the arm and told him not to work any more; that his arm was broken. Appellant was asked if the lifting of the bale of wire broke his arm again and he stated that he thought it had a lot to do with it. Appellant was also asked if when he went to see Dr. Bray on this occasion he told the doctor that he had had an accident and stated "I thought I did. I thought I told him I had hurt it again," but appellant stated that he couldn't say for sure that he had told the doctor he had an accident; that he told the doctor "I had hurt it and it was hurting and I wanted him to check it; see if it was getting worse or what was the matter with it."

Also, in answer to questions concerning whether he had broken his arm at the time of the alleged injury on May 22, 1962, appellant stated "Yes, sir. I believe I broke it again; pulled it loose."

Dr. Willis J. Bray who had treated appellant as above indicated was called as a witness by appellee insurance company. He testified that he saw appellant on July 19, 1961, at Hendricks hospital about 1:35 a. m. suffering from a dislocated elbow and fractured arm; that he reduced the fracture and dislocation and placed a cast on the arm but that appellant's progress was not good; that the dislocation slipped and it was necessary to do an open reduction on the dislocated elbow; that after this surgical operation appellant appeared to be doing well and the pin was removed from the elbow on August 10, 1961, but, thereafter, on August 17, 1961, there appeared to be a tendency for stiffness in the elbow and the cast was left off in spite of certain dangers in the fracture healing and the danger of non-union. The doctor stated that this was done to give appellant a better chance for a good elbow. The doctor further testified that on September 22, 1961, x-rays indicated that the fracture was healing. Then on November 3, 1961, appellant came to the doctor again complaining of a rattling sensation in the region of the fracture and the doctor felt after clinical examination and the taking of x-rays that there was a non-union of the ulna. It was then that the doctor recommended that there should be an open reduction and bone graft of the fracture; that appellant however was reluctant to accept surgery and the doctor started him on a series of immobilization, or a prolonged immobilization, in a cast to see if the break would heal. The doctor stated that on November 28 it appeared that there was no longer any sense of motion at the fracture site; that on January 11, 1962, x-rays were made of the cast and showed definite progress toward healing; that x-rays were again made on February 5, 1962, and showed a continuation of the progress toward healing, but that appellant

was still not ready for work; that appellant was seen again on March 12, 1962, and x-ray pictures showed excellent progress toward healing and it was then that the doctor released appellant to do light work. On April 24, x-rays were again made and on that occasion it appeared that the degree of healing had regressed but the doctor stated that on account of the difference in x-ray techniques, he could not be sure. The doctor stated, however, that at that time he advised Gipson that there was a regression in the healing process.

Dr. Bray testified that he next saw Gipson on May 22, 1962. This was the date of the alleged accident. The doctor stated that at that time appellant was complaining of pain at the tip of the ulna, where one end of the pin was and on down the forearm, where the other end of the pin was inside the bone. The doctor testified that it appeared from the x-rays that the condition of appellant's arm was a little better than it had been on April 24, but not as good as it had been on March 12. He testified that he did not find any condition that looked like there had been an injury on that day. The doctor stated that he saw appellant again on May 25, 1962, and at that time it appeared he was having some irritation of the periosteum by erosion of the tip end of the pin but the doctor felt he could not remove the pin because the healing was not satisfactory for the removal. The doctor testified that there was another x-ray on June 24, 1962, and at that time it was obvious that there had been a definite non-union and he again recommended that appellant should have a bone graft; that on August 1, 1962, an open reduction, bone graft and replacement of the pin with a longer pin was done; that on October 3, 1962, excellent progress toward healing was shown by the x-rays; that on November 30 x-rays showed healing was well progressed and appellant was okay for light work, but there was a delay in removing the pin because of appellant's past troubles in getting a union or healing of the arm. Dr. Bray testified that in his opinion the arm was never completely healed from the first injury in July of 1961. The doctor further testified as follows: "You have to say that the original accident was the primary cause and that the injury that occurred later was a contributing cause."

The above substantial statement of the evidence is given for a clear understanding of appellant's contention that there was some evidence to the effect that his disability resulted directly from the injury in question and independently of all other causes. In this connection appellant particularly points out and relies upon his own testimony to the effect that "* * * they wasn't nothing wrong * * *"; also appellant testified "I told him it was recovering. Yes, sir, I believe it had at the time. I was doing my job and working and it was all right." Appellant also testified "He asked me if it was recovered; if it was doing all right and I was using it and I told him yes, it was doing just fine and I was working at the time." We cannot agree with appellant's contention that the above testimony, which he relies upon, is any evidence of probative value tending to show that his disability resulted directly from the injury in question and independently of all other causes. Appellant's statement that "* * * they wasn't nothing wrong * * *" was made concerning his regular monthly visits to the doctor in compliance with the doctor's request in connection with his treatment and examination. The effect of this testimony was an explanation by appellant of his regular visits to the doctor in which he stated "but there wasn't nothing wrong and lots of times it would be over a month; be a month and a half." Appellant's statement to the effect that "I told him it was recovered. Yes, sir. I believe it had at the time. I was doing my job and working and it was all right," was his version of his representation to the agent of appellee insurance company at the time he took out the policy. The application for the insurance stated that appellant's arm had recovered. The above

statement to the insurance agent was simply an explanation of the reason he had made the statement in his application. The statement was prior to and had no reference to the results of the accident on May 22. The statement by appellant that "he asked me if it was doing all right and I was using it and I told him yes, it was doing just fine and I was working at the time" also referred back to the time of the application for and the issuance of the insurance policy sued upon. Appellant's testimony that he had made this statement to the insurance agent also referred to an occasion prior to the date of the accident on May 22 and had no reference to the result of that accident or to the cause of the disability he thereafter suffered.

We are also unable to agree with appellant's contention that the following evidence by Dr. Bray constitutes some evidence that appellant's disability resulted directly from the alleged May 22, 1962, injury or break of his left arm independently of all other causes.

"Q—Now, without that extra stress, that might have been caused by excessive weight, will you tell us whether or not your healing process might have continued?

"A—(Dr. Bray) Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q—Doctor, would you say that but for or except for some interference, with your healing procedure on two different occasions, that the man would have gotten well?

"A—That's right.

"Q—Two different times he would have gotten well if something extra hadn't happened, is that right?

"A—Yes, sir."

The effect of the above testimony by Dr. Bray was simply that extra stress caused by lifting the sixty pound weight might have contributed to appellant's subsequent disability. It constitutes no evidence that there had been a complete recovery of the fractured arm prior to the alleged accidental injury of May 22, 1962, or that appellant's disability resulted directly therefrom and independently of the prior injuries. This evidence does not negative the proposition that the prior injuries to and fractures of appellant's left arm also contribute to his disability existing after the alleged injury of May 22, 1962. The probative force of the evidence is so weak that, at most, it merely raises a surmise or suspicion of the existence of the fact sought to be proved. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. Also see Simonds v. Stanolind Oil & Gas Company, 134 Tex. 332, 136 S.W.2d 207; Continental Casualty Company v. Fountain, Tex.Civ.App., 257 S.W.2d 338, (Writ Ref.); Standard Life & Accident Insurance Company v. Roberts, Tex. Civ.App., 318 S.W.2d 757; Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217. Appellant's first point is overruled.

It is contended in appellant's second point that the court erred in overruling his motion for judgment on the verdict because the jury answered special issues which authorized a judgment for appellant under the terms of the policy under consideration. The findings of the jury which appellant contends authorize a judgment in his favor are (1) that appellant did sustain an accidental bodily injury on May 22, 1962, and (2) that appellant became wholly and continuously disabled from performing every duty pertaining to his occupation as a result of such accident. Appellant contends, in effect, that his right to recover was established by the showing that he was disabled during the policy term by accidental injury. Appellant urges that the burden of proof was on the insurance company to plead and prove prior contributing causes to disability and that the jury found that appellant's left arm had recovered from the previous fracture or fractures at the time he made application for the insurance policy and that the defense of prior contributing causes was

therefore specifically rejected by the jury. We cannot agree with this contention. There was no provision in the policy sued upon permitting appellant to recover for any loss except a loss resulting directly and independently of all other causes from accidental bodily injury sustained during the term of the policy. The burden was on appellant to establish that his disability did result directly from the injury complained of independently of all other causes. Bethea v. National Casualty Company, Tex. Civ.App., 307 S.W.2d 323; Combined American Insurance Company v. Tunnell, Tex.Civ.App., 311 S.W.2d 76. There was no evidence of probative force to support the submission of such an issue to the jury and the jury was unable to answer the question when it was submitted in Special Issue No. 3. As above noted appellant relies in this connection upon the finding of the jury in answer to Special Issue number 5 to the effect that appellant had recovered at the time he made application for the insurance policy. Appellant's argument and contention in this respect is not well taken for several reasons. In the first place this issue was a defensive issue dealing with the question of alleged misrepresentations by appellant at the time he applied for the insurance. The issue was one in which the defendant had the burden to establish that Gipson's left arm had not healed and the burden was so placed in the submission of the issue. The negative finding does not amount to a finding based upon a preponderance of the evidence that the arm had recovered. It certainly is not a finding that the arm had recovered at that time to the extent that it could not have been a contributing cause to any disability thereafter suffered by appellant. If the finding should be given that effect, then it was without any support in the evidence. In addition, it is noted that in special issue 6 the jury found from a preponderance of the evidence that Gipson knew on May 3, 1962, that his arm had not recovered. Appellant's second point is overruled.

The judgment is affirmed.