J. L. COPELAND et ux., Appellants,

v.

STANOLIND OIL & GAS COMPANY et al., Appellees.

No. 6802.

Court of Civil Appeals of Texas.

Texarkana.

May 12, 1955.

Rehearing Denied June 9, 1955.

Cornelius & Cornelius, Jefferson, for appellants.

Bruce R. Merrill, Ward T. Jones, Houston, C. C. Renfro, Dallas, Blalock & Peteet, Edward L. Peteet, Marshall, Garrett & Garrett, Rufus S. Garrett, Ft. Worth, Spruiell, Lowry, Potter & Lasater, Oran Lowry, Tyler, Turner, Rodgers, Winn, Scurlock & Terry, C. Sidney McClain, Dallas, for appellees.

FANNING, Justice.

This suit was brought by J. L. Copeland and wife, as plaintiffs, in statutory form of trespass to try title to an undivided $\frac{3}{4}$ mineral interest in and under a 100.11–acre tract of land in the S. F. Sparks Survey in Harrison County, Texas, against Stanolind Oil & Gas Company, Continental Oil Company, U–Tex Oil Company, Toklan Production Company, Roklan Royalty Company, J. G. Catlett, The J. G. Catlett Company, Inc., Carl E. Krog, Carl E. Krog, Trustee, R. D. Goodrich, G. A. Ritnour, Mrs. Lou T. Foster, Harold Foster, Frank Haynes, Individually and as Guardian of the Estate of James R. Haynes, and numerous other individual and corporate defendants. The named defendants filed their respective answers consisting in each instance of at least a statutory plea of "Not Guilty," and in some instances of additional pleas of general denial and the two- and four-year statutes of limitation, Vernon's Ann.Civ.St. arts. 5526, 5527.

Prior to the date of the trial, the court granted plaintiffs' motion for an interlocutory judgment against the parties-defend-

ant who had been properly served but who had not filed answers.

The trial was before the court without a jury. At the close of appellants' testimony, and prior to the introduction of any evidence by defendants, certain of the defendants moved the court for judgment, and this motion for judgment was granted in favor of all of the parties-defendant, except those against whom the interlocutory default judgment was taken and those defendants not served who had been severed from the cause. Based on the granting of the motion for judgment, the court entered its judgment that the plaintiffs take nothing by their suit against the answering parties-defendant, hereinafter referred to as appellees, and making final its said interlocutory judgment by default as against the parties-defendant who were served but did not answer. Subsequently the court filed its findings of fact and conclusions of law. Appellants filed objections to various findings of fact and conclusions of law of the trial court and also filed a request for various findings of fact which request was denied by the trial court. J. L. Copeland and wife have appealed.

Appellants introduced in evidence (among other instruments) various warranty deeds and other written instruments which reveal the following: On December 30, 1921, T. D. Rowell conveyed the land in issue to Richard Hawkins for a cash consideration of $500, and four vendor's lien notes each in the amount of $300, such conveyance reserving a vendor's lien.

On February 28, 1925, Hawkins borrowed $700 from the Federal Land Bank, paying the same over to Rowell, who, in turn, assigned $65 of vendor's lien note No. 2, and all of vendor's lien notes Nos. 3 and 4, along with his superior title to the Federal Land Bank. On the same day Hawkins executed a deed of trust on the land in issue to the benefit of the Federal Land Bank.

On January 1, 1927, Hawkins executed two notes each in the amount of $241.19, the first of which was due January 1, 1928,

and the second on January 1, 1929. These notes were in renewal and extension of all principal and interest then due by Hawkins to Rowell on all previous notes. On the same day Hawkins executed an instrument extending Rowell's vendor's lien, but making such lien subject and inferior to the lien of the Federal Land Bank.

On October 24, 1930, Hawkins conveyed ½ of the minerals under the land in issue to J. R. Meeker. On January 10, 1931, Hawkins conveyed ¼ of the minerals under the land in issue to W. D. Wells. (Note: The two mineral deeds from Hawkins to Meeker and Wells, above referred to, were introduced in evidence by appellants' attorney with the statement as follows: "Your Honor, we have those two instruments here that we are offering for the limited purpose of showing common source of title and showing the nature of defendants' claim only.")

On June 23, 1933, Hawkins conveyed said land by warranty deed to Rowell. We quote from said deed as follows:

"* * * for and in consideration of the sum of five dollars to me in hand paid by T. D. Rowell Sr the receipt of which is acknowledged, and confessed, and the additional consideration as follows: That I am justly due the said T. D. Rowell as part purchase price of said land two notes in the sum of $241.19 each dated January 1st 1927, due as stated in my deed, which two said notes I have been unable to pay.

"In Addition to said two notes I have procured from the Federal Land Bank of Houston, a loan on the said land, the payments on which have regularly been paid by the said T. D. Rowell Sr as part consideration for this transfer from me to the Federal Land Bank of Houston. In Full discharge of the said two Vendors Lien notes and the assumption of debt due by me to said Federal Land Bank of Houston, I am making this transfer to the said T. D. Rowell Sr. The cash

consideration and valuation of said land being $500.00."

On December 14, 1942, Rowell conveyed the land in issue to J. L. Copeland, appellant herein, plaintiff below, for a consideration of $100 cash, a note in the amount of $360.82, and the assumption of $532.18 still owing on the debt of Hawkins to the Federal Land Bank which Rowell had assumed when Hawkins reconveyed to Rowell. We quote from said deed as follows:

"It is understood in this conveyance by the grantor and grantee, that all taxes have already *have* been paid or must be paid by the grantor herein, both State and County to Jan. 1st. 1943. It is stated also as a fact there have been certain mineral conveyances to a part of the minerals in and under this land, and the grant*or* accepts this conveyance subject to all mineral conveyances now in force and effect on said land, and it is estimated that there has been approximately three fourths of the minerals in and under this land heretofore conveyed. It is also agreed that as to the grantor herein there are no mineral reservations retained by said grantor, and it is the purpose of this deed to convey to the grantee herein all minerals in and under said land, which has not been heretofore legally conveyed."

On May 24, 1945, the Federal Land Bank released its deed of trust on the lands in issue.

Oral evidence was further adduced on the trial of the cause of the following facts: On October 15, 1949, Copeland executed an oil and gas lease to Stanolind Oil & Gas Company, the draft to cover a full mineral interest being refused by Stanolind, and Copeland accepting in lieu thereof a draft covering a ¼ mineral interest. Subsequent to the last above date, Copeland has accepted delay rentals and royalties based upon a ¼ mineral interest.

We quote from the findings of fact and conclusions of law of the trial court as follows:

"Findings of Fact

"1. Plaintiffs, J. L. Copeland and wife, Mildred Maudeline Copeland, did not introduce an unbroken chain of title from the sovereignty of the soil into J. L. Copeland.

"2. Plaintiffs did not connect all of the defendants who were served, and who answered with pleas of 'Not Guilty,' to the asserted common source of title, T. D. Rowell.

"3. Plaintiffs did not establish in their favor in their attempt to prove prior possession of the undivided ¾ mineral interest, which interest is the subject of this controversy, that they had possession of the said mineral interest prior to the dates of the deeds from Richard Hawkins to J. R Meeker and W. D. Wells, under whom defendants claim.

"4. Plaintiffs did not plead, that they had acquired title by limitation to the undivided ¾ mineral interest conveyed by Richard Hawkins to J. R. Meeker and W. D. Wells in and under the subject tract and all of the proof that was introduced to that effect was objected to by defendants at the trial.

"5. On December 30, 1921, T. D. Rowell conveyed the 100.11 acre tract of land in the S. F. Sparks Survey, Harrison County, Texas, which is the tract in controversy in this cause, to Richard Hawkins by warranty Deed. Part of the consideration for this conveyance was the execution of four vendor's lien notes, each in the amount of $300.00, and a vendor's lien was expressly retained in the deed in favor of T. D. Rowell.

"6. On February 28, 1925, T. D. Rowell assigned to the Federal Land Bank of Houston all of the above Notes 3 and 4 and $65.00 of Note 2; and, in addition, transferred to the bank the 'superior title' to the subject tract of land.

"7. On the same date, February 28, 1925, Richard Hawkins executed a Deed of Trust to said Federal Land Bank to secure payment of a Federal Land Bank note of $700.00.

"8. On January 1, 1927, Richard Hawkins executed an extension agreement extending the time for payment of said Notes 1 and 2 so that Note 1 would be due on January 1, 1928 and Note 2 would be due on January 1, 1929.

"9. On October 24, 1930, Richard Hawkins conveyed an undivided ½ mineral interest in the subject land to J. R. Meeker.

"10. On January 10, 1931, Richard Hawkins conveyed an undivided ¼ mineral interest in the subject land to W. D. Wells.

"11. The 'superior title' to the land still reposed in the Federal Land Bank of Houston on June 23, 1933.

"12. On June 23, 1933, Richard Hawkins purported to convey the subject tract of land back to T. D. Rowell. The consideration recited in this conveyance included a cash consideration as well as cancellation of two notes and T. D. Rowell's assumption of the indebtedness due on the land to the Federal Land Bank of Houston without using any word indicating that the transaction was a rescission of the 1921 sale.

"13. The said conveyance of June 23, 1933, was executed at a date more than four years after the due dates of both the said extended Notes 1 and 2.

"14. On December 14, 1942, T. D. Rowell conveyed the subject tract to J. L. Copeland. This deed contained the following recitation: 'It is stated also as a fact there have been certain mineral conveyances to a part of the minerals in and under this land and the grantor accepts this conveyance subject to all mineral conveyances now in force and effect on said land and it

is estimated that there has been approximately three-fourths of the minerals in and under this land heretofore conveyed.'

"15. At the time T. D. Rowell executed the conveyance to J. L. Copeland on December 14, 1942, and the said J. L. Copeland had actual notice both by virtue of the contents of his deed and by virtue of information conveyed to him separately to T. D. Rowell, that the said conveyances from Richard Hawkins to J. R. Meeker and W. D. Wells had been made previously.

"16. On May 24, 1945, the Federal Land Bank executed a general release of the Richard Hawkins' Deed of Trust.

"17. After the conveyance of December 14, 1942, J. L. Copeland and his wife leased their interests in the subject tract to Stanolind Oil & Gas Company.

"18. At the time of said lease to Stanolind Oil & Gas Company, the J. L. Copelands received a bonus for the execution of said lease and since that time have received and accepted delay rentals and royalties under the terms of the lease.

\*     \*     \*     \*     \*     \*

## Conclusions of Law

"1. From the facts, I conclude that plaintiffs are not entitled to recover title to the undivided ¾ mineral interest in and under the tract in dispute for which they sued as against any of the defendants who contested plaintiffs' title by pleas of 'Not Guilty.'

"2. Plaintiffs failed to establish title in themselves to the undivided ¾ mineral interest in controversy by deraignment from the sovereignty of the soil.

"3. Plaintiffs failed to establish title in themselves to the undivided ¾ mineral interest in controversy by proof of common source of title with all of

the defendants who filed answers in this cause.

"4. Plaintiffs failed to establish their title to the undivided ¾ mineral interest in controversy by prior possession.

"5. Plaintiffs neither pleaded nor proved title by limitation to the undivided ¾ mineral interest involved in this cause.

"6. The 'superior title' to the subject tract of land having been conveyed by T. D. Rowell to the Federal Land Bank of Houston prior to the date of the conveyance of June 23, 1933, from Richard Hawkins to T. D. Rowell, and remaining in said bank on said date, T. D. Rowell was thereafter simply a lien-holder and the said conveyance had the effect of conveying to T. D. Rowell only the surface and an undivided ¼ of the minerals in and under the subject tract and did not affect or disturb the undivided ¾ of the minerals under the subject tract theretofore conveyed by Richard Hawkins and vested in J. R. Meeker and W. D. Wells. This conveyance of June 23, 1933, did not have the effect of operating as a rescission of the contract of sale resulting from Richard Hawkins' purchase of said land.

"In reaching the above conclusion, I have been guided by the following authorities: Cleveland State Bank v. Gardner [Tex.Com.App., 121 Tex. 580], 50 S.W.2d 786; Henderson v. Hall [Tex.Civ.App.], 174 S.W.2d 985 (W/e ref., want of merit.).

"7. T. D. Rowell did not reacquire the 'superior title' to the land in controversy prior to the June 23, 1933, conveyance from Richard Hawkins. The 'superior title' does not pass by subrogation.

"In reaching the above conclusion, I have been guided by the following authority: Rhiddlehoover v. Boren, [Tex.Civ.App.], 260 S.W.2d 431.

"8. When, on January 1, 1933, the bar of the four year statute of limitations became effective as to the said extended Notes Nos. 1 and 2, due January 1, 1928, and January 1, 1929, respectively, there became operative a conclusive presumption of payments of the said notes, the effect of which was to terminate any 'superior title,' if any, which might have remained in T. D. Rowell and to terminate all remedies for the enforcement of such 'superior title', if any. The remedy of rescission was thus also lost to T. D. Rowell, and he could not thereafter rescind the contract of sale resulting from Richard Hawkins' purchase, on December 30, 1921, of said land either by suit or without suit; consequently, the said reconveyance by Richard Hawkins to Rowell did not wipe out the said intervening mineral conveyances to J. R. Meeker and W. D. Wells.

"In arriving at the above conclusion, I have been guided by: Yates v. Darby, 133 Tex. 593, 131 S.W.2d 95.

"9. If the court should be in error as to the status of the 'superior title,' nevertheless plaintiffs are not entitled to recover because the deed dated June 23, 1933, from Richard Hawkins to T. D. Rowell clearly discloses that the transaction was one of sale and purchase as distinguished from rescission of the 1921 transaction.

"10. By this statement in his deed of December 14, 1942, to J. L. Copeland, which statement is copied under Findings of Fact No. 14, T. D. Rowell ratified and confirmed the said mineral conveyances executed by Richard Hawkins to J. R. Meeker and W. D. Wells, and thus became bound by the terms and provisions of the said mineral conveyances.

"In arriving at the above conclusion, I have been guided by the following authorities: Greene v. White, 137 Tex. 361, 153 S.W.2d 575 [136 A.L.R. 626]; Grissom v. Anderson, 125 Tex. 26, 79

S.W.2d 619; Humble Oil & Refining Co. v. Clark, 126 Tex. 262, 87 S.W.2d 471; Leopard v. Stanolind Oil & Gas Co. [Tex.Civ.App.], 220 S.W.2d 259 (w/r, n. r. e.); Humble Oil & Refining Co. v. Davis [Tex.Civ.App.], 282 S.W. 930; Van Deventer v. Gulf Production Co. [Tex.Civ.App.], 41 S.W.2d 1029 (w/r); Texas & Pacific Coal & Oil Co. v. Kirtley [Tex.Civ.App.], 288 S.W. 619 (w/r); Loeffler v. King [149 Tex. 626], 236 S.W.2d 772; Reserve Pet[roleum] Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456 [7 A.L.R.2d 228]; Turner v. Hunt, 131 Tex. 492, 116 S.W. 2d 688 [117 A.L.R. 1066]; Simonds v. Stanolind [Oil & Gas Co., Tex. Com.App., 134 Tex. 332], 114 S.W.2d 226.

"11. The recitals in the deed of December 14, 1942, from T. D. Rowell to J. L. Copeland to the effect that Copeland 'accepts this conveyance subject to all mineral conveyances now in force and effect on said land and it is estimated that there has been approximately three-fourths of the minerals in and under this land heretofore conveyed,' were contractual provisions that bound both Rowell and Copeland by limiting and defining the character and extent of the ownership and interests conveyed to J. L. Copeland; consequently, from this deed, Copeland obtained title to only an undivided ¼ mineral interest in the subject tract of land and plaintiffs cannot recover the undivided ¾ interest for which they are suing.

"In reaching the above conclusions, I have been guided by the following authorities: Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599; Duncan v. Adams [Tex.Civ.App.], 210 S.W.2d 180; Greene v. White, 137 Tex. 361, 153 S.W.2d 575 [136 A.L.R. 626]; White v. Greene [Tex.Civ.App.], 129 S.W.2d 801; Waco Bridge Co. v. City of Waco, 85 Tex. 320 [20 S.W. 137]; Nye v. Bradford [144 Tex. 618], 193 S.W.2d 165 [69 A.L.R. 1].

"12. T. D. Rowell having ratified the said mineral conveyances from Richard Hawkins to J. R. Meeker and W. D. Wells and being estopped to deny the legal effect of the acts which he ratified, J. L. Copeland, his immediate successor-in-title, having taken his interest with knowledge of the ratification, is likewise bound by the ratification and is estopped to contest it.

"In reaching the above conclusion, I have been guided by the following authorities: Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599; Wickwire-Mitchell Royalty Trust v. Taylor [Tex.Civ. App.], 200 S.W.2d 441; Luter v. Rose, 20 Tex. 639; Simonds v. Stanolind Oil & Gas Co. [Tex.Com.App., 134 Tex. 332], 114 S.W.2d 226; Havard v. Smith [Tex.Civ.App.], 13 S.W.2d 743; Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688 [117 A.L.R. 1066]; Kimbro v. Hamilton, 28 Tex. 560.

"13. By their acceptance of the bonus money, delay rentals and royalties under the Stanolind Oil & Gas Company lease with full knowledge of the lessee's claim that ¾ of the minerals in and under the subject tract was owned by others, the Copelands ratified the said mineral conveyances made by Richard Hawkins to J. R. Meeker and W. D. Wells.

"See authorities listed under Conclusions of Law No. 9.

"14. When the Federal Land Bank of Houston, on May 24, 1945, released the Deed of Trust executed by Richard Hawkins in its favor on February 28, 1925, and also 'all liens' created by virtue of said Deed of Trust and the notes which it secured, the release operated only to extinguish the 'superior title,' Deed of Trust and Vendor's Lien theretofore held and owned by said bank and to transform the equitable titles of J. R. Meeker and W. D. Wells and their assignees and successors in title into full and complete legal and equitable titles.

"In reaching the above conclusion, I have been guided by the following authorities: 43 Tex.Jur., Vendor and Purchaser, Secs. 143 and 148; Rooney v. Porch [Tex.Com.App.], 239 S.W. 910; Yates v. Darby, 133 Tex. 593, 131 S.W.2d 95; McDowell v. [M. T.] Jones Lumber Co. [42 Tex.Civ.App. 260], 93 S.W. 476; Carey v. Starr, 93 Tex. 508 [56 S.W. 324]."

Appellants present 31 original points and five reply points. The majority of their points complain of various fact findings and conclusions of law made by the trial court and of various requested findings of fact that the trial court refused to make. In addition to those points appellants contend, among other things, that the two mineral deeds in question from Hawkins to Meeker and Wells were introduced in evidence for the limited purpose stated, that appellees showed no title, and that appellants did; that appellants also proved title under the theory of prior possession, etc.; that the reconveyance from Hawkins to Rowell in June 1933, was a rescission deed and terminated the title of those claiming under Meeker and Wells, etc.; that the recitations in the deed from Rowell to Copeland did not constitute a ratification of the two mineral deeds in question but that they were inserted in the deed only to protect Rowell on his warranty, etc.; that Rowell was a mortgagee in possession at the time of the reconveyance deed to him by Hawkins and appellants are entitled to recover, etc. Appellants also make other contentions, seeking a reversal and rendition of this cause in their favor.

Appellees present several counter-points where they contend, among other things, that the judgment of the trial court should be affirmed because: (1) The deed from Hawkins to Rowell, a link in appellants' chain of title, was a sale and purchase transaction, and was not a rescission of the prior sale of the land by Rowell to Hawkins and did not destroy the title to the mineral interests Hawkins had theretofore conveyed to Meeker and Wells; (2) that Rowell did not own the superior title, was a mere lienholder, and the conveyance from Hawkins to Rowell on June 23, 1933, did not operate as a rescission of the contract of sale resulting from Hawkins' purchase of the land from Rowell in 1921; (3) that appellants failed to establish title to the ¾ mineral interest in question in themselves in any manner, etc.; (4) that the mineral deeds in question were ratified by Rowell and appellants by reason of the recitations in the deed from Rowell to Copeland, and were ratified by appellants by their accepting bonus money and lease rentals from Stanolind in the manner shown by the evidence; (5) that the appellants were estopped to deny the ratification, etc. Appellees also make other contentions seeking an affirmance of the cause.

While the points, counter-points, contentions and counter-contentions in this case are numerous, we think that the real and controlling issues are relatively few in number. After carefully examining the record and the authorities cited in the excellent briefs filed by the various parties, we have reached the conclusion that this case should be affirmed for several reasons, as hereinafter stated.

We hold that the findings of fact of the trial court are sufficiently supported by the evidence.

We further hold that appellants' several points complaining of the refusal of the trial court to make certain findings of fact requested by appellants do not reflect error as those proposed findings are largely immaterial and are not controlling or ultimate issues and are matters that would have no bearing on the judgment, see Wade v. Taylor, Tex.Civ.App., 228 S.W.2d 922, and in other cases are undisputed facts which otherwise appear in the record and are not necessary to be incorporated in the formal findings of fact, and in a few cases are matters which we think are not supported by the record.

■ It is our view that when appellants introduced in evidence the deed from Rowell

to appellant Copeland, showing that the title to ¾ of the the minerals was outstanding that in itself constituted a break in the chain of appellants' alleged title to the ¾ mineral interest sued for and therefore appellants claiming under the Rowell deed to Copeland could not establish title in themselves until they satisfactorily accounted for or negatived the outstanding ¾ mineral interest. See the following authorities: Waggoner v. Dodson, 96 Tex. 415, 73 S.W. 517; Mills v. Pitts, 121 Tex. 196, 48 S.W.2d 941, 84 A.L.R. 319; Ball v. Carroll, 42 Tex.Civ. App. 323, 92 S.W. 1023, w/r; Associated Oil Co. v. Hart, Tex.Civ.App., 10 S.W.2d 791, w/d.

Appellants, evidently realizing that they were confronted with the burden of negativing the effect of the recitals in said Rowell-to-Copeland deed with respect to the outstanding ¾ mineral interest, introduced in evidence the mineral deeds from Hawkins to Meeker and Wells (conveying a total of ¾ of the minerals) "for the limited purpose of showing common source of title and the nature of defendants' claim only," and also introduced in evidence the Rowell-to-Hawkins deed, the various instruments with reference to the Federal Land Bank transaction, the deed from Hawkins to Rowell, and various other instruments and evidence to support the theory of appellants that the deed from Hawkins to Rowell was a rescission deed which operated to wipe out or extinguish the rights of the parties claiming under the mineral deeds that Hawkins had given to Meeker and Wells, and by this appellants evidently sought to account for the ¾ mineral interest sued for. Appellants undoubtedly realized from the beginning that the mineral deeds in question from Hawkins to Meeker and Wells had to be satisfactorily accounted for or negatived by them as they specifically pleaded in their original petition as follows:

"The mineral interest herein sued for being the same mineral interest undertaken to be conveyed by Richard Hawkins to J. R. Meeker by Mineral Deed dated October 24, 1930, and re-

corded in Volume 169 page 132, Deed Records Harrison County, Texas, and by Mineral Deed from Richard Hawkins to W. D. Wells dated January 10, 1931, recorded in Volume 173, page 200, Deed Records Harrison County, Texas."

We quote from 43-A Tex.Jur. as follows:

"However, the remedy by rescission is one which the law does not favor. Accordingly, the facts authorizing a rescission *must clearly and satisfactorily appear,* and circumstances indicating a purpose of a party not to insist upon this remedy will be treated as a waiver of the right to rescind. Thus, delay in rescinding is held to constitute a waiver of the right." Sec. 460, p. 503. (Emphasis added.)

"And rescission without suit should not be permitted when the circumstances are such that it could not be effected by resort to the courts." Sec. 502, p. 541.

"The right of rescission by the vendor is an alternative, equitable remedy to which he may resort in certain circumstances, *on the strength of his superior title.* * * * . The rule extends, of course, to a successor holding the legal or superior title of the vendor. Thus, the holder of the unpaid purchase money note and *the superior title* of the vendor may either foreclose the lien or rescind the sale for nonpayment of the note." Sec. 499, pp. 538–539. (Emphasis added.)

"On the other hand *when the vendor assigns his superior title he loses his right to rescind the contract* or recover the property, though his right to foreclose the vendor's lien is unaffected if he has not parted with the purchase money note and the lien." Sec. 272, p. 329. (Emphasis added.)

"The statute requires actions for the recovery of real estate by virtue of a superior title retained by the vendor

in a deed of conveyance or purchase money note to be instituted within four years after the cause of action accrues." Sec. 483, p. 527.

■ Both Rowell and Hawkins were dead at the time of the trial—no oral evidence was introduced with reference to their intent with respect to the Hawkins-to-Rowell deed. The Hawkins-to-Rowell deed (which does not contain any reference whatever to rescission) shows a *cash* consideration in addition to the cancellation of the Hawkins notes to Rowell and Rowell *expressly* assumed the Federal Land Bank lien. Also later in the Copeland deed Rowell points out that there have been mineral conveyances made, approximately ¾ of the minerals, and uses the term, among others, "it is the purpose of this deed to convey to the grantee herein all minerals in and under said land, which has not been heretofore *legally conveyed."* (Emphasis ours.) Certainly there was nothing illegal about the mineral conveyances from Hawkins to Meeker and Wells under this record. We also think the recitations in the Copeland deed are wholly inconsistent with any intention to rescind. We agree with the trial court that the deed from Hawkins to Rowell (which was a link in appellants' chain of title) evidenced a sale and purchase transaction, and was not a rescission or an attempted rescission of the prior sale of the land by Rowell to Hawkins, and we think this case can clearly be affirmed upon the proposition that the deed from Hawkins to Rowell was a sale and purchase transaction, was not a rescission or an attempted rescission, and consequently did not destroy or otherwise affect the title to the mineral interests Hawkins had theretofore conveyed to Meeker and Wells.

■ We also agree with the trial court that since Rowell did not own "the superior title" to the tract in question on the date of the Hawkins-to-Rowell deed (and in addition to this the Hawkins notes to Rowell were then barred by the 4-year statute of limitation), he (Rowell) had no power to rescind (even if he intended to rescind, which intention we think he did not have)

under the facts of this case so as to destroy or wipe out the ¾ mineral interests that Hawkins had previously conveyed to Meeker and Wells. See the following authorities: Henderson v. Hall, Tex.Civ.App., 174 S.W.2d 985, w/r, n. r. e.; Robinson v. Smith, Tex.Civ.App., 130 S.W.2d 381, w/r; Cleveland State Bank v. Gardner, Tex.Com.App., 121 Tex. 580, 50 S.W.2d 786; Rhiddlehoover v. Boren, Tex.Civ.App., 260 S.W.2d 431; Yates v. Darby, 133 Tex. 593, 131 S.W.2d 95.

We also think the case at bar is clearly distinguishable from the case of Yett v. Houston Farms Development Co., Tex.Civ. App., 41 S.W.2d 305, which case appellants rely on to support their claim of rescission. In the Yett case *there was an understanding that a rescission would be made*—in the case at bar there was none.

■ We also think the record clearly supports the trial court's finding and holding that appellants did not establish title to the ¾ mineral interest in question under the theory of "prior possession." See the following authorities: 2 Tex.Jur., Sec. 123, pp. 228, 229; Cook v. Spencer, Tex.Civ.App., 91 S.W. 813; Noble v. Cooke, Tex.Civ.App., 253 S.W.2d 911, w/r, n. r. e.; Houston Oil Co. of Texas v. McCarthy, Tex.Com.App., 245 S.W. 651.

We think this case can also be affirmed on the theories of ratification and estoppel as set out in Conclusions of Law Nos. 10, 11, 12 and 13 of the trial court under the authorities cited therein.

■ We are also in accord with all of the conclusions of law made by the able and learned trial judge, and we think this case can be affirmed upon all the theories found by the trial court. However, if we be mistaken in this, we think that this case can clearly be affirmed upon several theories. Since the case was tried by the court without a jury, the judgment of the trial court will not be disturbed if the judgment is supported by the evidence and the law upon any theory. Gray v. Luther, Tex.Civ.App., 195 S.W.2d 434, w/r, n. r. e.

In any and all events, we conclude that the trial court rendered a correct judgment in favor of appellees. Each and all of appellants' points have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.