**J.R. PARTEN, et al., Appellants,**

**v.**

**Ernest H. CANNON, et al., Appellees.**

**No. 10–91–106–CV.**

Court of Appeals of Texas,
Waco.

April 8, 1992.

Rehearing Denied May 13, 1992.

---

Jesse R. Pierce and Thomas H. Lee, Porter & Clements, Houston, Otis W. Carroll and Donald Carroll, Ireland, Carroll & Kelly, P.C., Tyler, for appellants.

B. Lee Ware, Vinson & Elkins, Frank W. Mitchell, Houston, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

The Partens sought a declaratory judgment that an oil and gas lease, executed in 1976 on a 658.62–acre tract of land owned by the Cannons, remained effective past the five-year primary term. The Cannons counterclaimed, alleging that the lease had terminated according to its own terms because the Partens failed to file with the Madison County Clerk a written description of the portions of the lease held by producing wells at the end of the primary term. After the first day of the jury trial, the parties made a number of factual stipulations regarding the acreage allotted to the production of oil and gas from various portions of the lease during and after the primary term. At that time, the trial court held that the lease was unambiguous and, over the Partens' objection, granted the Cannons' motion to withdraw the case from the jury. The court rendered judgment for the Cannons, declaring the lease void except as to 161 acres allotted to the Cannon oil well number seven.

In points one through four, the Partens contend that the trial court erred in failing to render judgment for them and in holding that any part of the lease had terminated because (1) the lease was fully developed at the end of the primary term and at least one well has continuously produced oil and gas in paying quantities beyond the primary term, (2) paragraph 18 of the lease was a covenant rather than a condition, and (3) the lease was ambiguous. In a single cross-point, the Cannons argue that the designation-and-filing provision of paragraph 18 was a condition rather than a covenant and that the entire lease terminated when the Partens failed to comply with its provisions. Paragraph 18 of the lease provides:

*Lessee must within ninety (90) days after the end of the primary term of this lease as to the leased premises which is not pooled under the provisions of Paragraph 4 hereof, designate in writing and place same of record with the County Clerk in Madison County, Texas, a description of that part of the leased premises which shall be allotted to such well for production purposes,* no more than 320 acres plus 10% tolerance to be allotted in and around each well classified as a gas well by the Railroad Commission of Texas, if completed at a depth of 8,500 feet or less below the surface nor more than 640 acres plus 10% tolerance to such gas well if completed at a depth of more than 8,500 feet below the surface, and no more than 10 acres plus 10% tolerance to be allotted in and around each well classified as an oil well by the Railroad Commission of Texas if completed at a depth of 2,500 feet or less below the surface. In the case of an oil well completed at a depth of more than 2,500 feet below the surface, there shall be allotted to that well for production purposes no more land than is allowed by the permanent field rules of the Railroad Commission for oil units for that horizon, nor more than 80 acres in the absence of permanent rules. *Production or operations on said allotted area by the Lessee shall maintain this lease in effect only with regard to the land within the described area. This lease shall terminate as to such part or parts of the leased land lying outside the allotted area* unless this lease is perpetuated as to such land outside the allotted area by operations conducted thereon or by production of oil or gas or by such operations and such production in accordance with the provisions hereof.

(Emphasis Added).

In construing paragraph 18, we note that an important distinction exists

between a condition and a covenant. *See Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989). As the Supreme Court pointed out in *Rogers,* the distinction between conditions and covenants lies in the appropriate remedy for their breach. *Id.* Breach of a condition results in automatic termination of the leasehold estate upon the happening of the stipulated events. *Id.* Breach of a covenant does not automatically terminate the estate, but instead subjects the breaching party to liability for monetary damages or, in extraordinary circumstances, the remedy of a conditional decree of cancellation. *Id.* Doubts should be resolved in favor of a covenant instead of a condition. *Id.* According to the court in *Rogers,* the language used by the parties to an oil and gas lease will not be held to impose a special limitation on the grant unless it is clear and precise and so unequivocal that it can reasonably be given no other meaning. *Id.*

It is undisputed that the Partens never recorded a written designation allocating any portion of the lease to producing wells at the end of the primary term. However, it is also undisputed that five wells were producing in paying quantities at the end of the primary term on 7 January 1981; that six additional wells were completed between 1981 and October 1986, when Ernest Cannon opposed any further drilling on the lease; and that two wells were producing in paying quantities at the time of trial. Therefore, before construing paragraph 18 as either a condition or a covenant, we must determine whether a distinction exists between the designation-and-filing provision in the first sentence of paragraph 18 and the production-and-allotment provision in the last two sentences of paragraph 18.

■ The production-and-allotment provision of paragraph 18 is similar to the provision interpreted by the court in *Mayfield v. de Benavides,* 693 S.W.2d 500, 502 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). The lease in *Mayfield* provided for termination at the expiration of the primary term "except such land as may be allocated to a well for production purposes." *Id.*

As in this case, the lease in *Mayfield* set out the maximum acreage that could be allotted to each oil and gas well. *Id.* The court in *Mayfield* held that such a provision was a "special limitation" on the grant. *Id.* at 503. Therefore, we construe the production-and-allotment provision of paragraph 18 as a condition.

■ Unlike the lease in *Mayfield,* paragraph 18 also contains a designation-and-filing provision that required the lessee to file with the county clerk a written designation allocating portions of the land to producing wells at the end of the primary term. However, the last sentence of paragraph 18 reflects the parties' intent that the perpetuation of the lease beyond the primary term was conditioned upon operations or production of oil and gas on the allotted portions of the lease rather than upon the filing of a written designation with the county clerk within ninety days after the end of the primary term. Furthermore, paragraph nine of the lease provides that, if the lessee fails to comply with an obligation under the lease, "lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract." The lessees then have ten days after receipt of the notice to satisfy their obligations under the lease. Although the Cannons notified the Partens, by a letter dated 30 October 1986, of their failure to comply with paragraph 18 of the lease, the same letter repudiated the Partens' right to drill additional wells on the lease. As a result, the Partens were not afforded the requisite ten days to comply with the designation-and-filing provision of paragraph 18.

■ If, in light of surrounding circumstances, the language of a contract appears to be capable of only a single meaning, the court can confine itself to the writing. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981). The surrounding circumstances, as reflected in John Parten's letter of 11 December 1975 to Ernest Cannon, involved the Cannons' concern that one well could "tie up a whole block of acreage for a long time," and the Partens' intent "to drill and return to [the Cannons]

the acreage that is not producing at the end of five years." The plain language of the lease indicates that, although undeveloped portions of the lease would be returned to the Cannons, the parties never intended a forfeiture to occur on portions of the lease maintained by operations or production beyond the primary term. Because the designation-and-filing provision constituted a covenant rather than a condition, no automatic termination of the lease resulted from the alleged breach of that provision. *See Rogers*, 772 S.W.2d at 79.

In *Whitaker v. Formby*, 469 S.W.2d 241, 244 (Tex.Civ.App.–Texarkana 1971, writ ref'd n.r.e.), the appellees failed to designate the 80 acres allotted to a producing well on a 113.121–acre tract. The court in *Whitaker* characterized the failure to designate as a breach of covenant but denied damages to the appellants because they claimed an undivided interest in the entire lease without first requesting the appellees to designate the allotted acreage. *Id.* at 247–48. In this case, the Partens' argue that they did not file a designation of the allotted acreage because the lease was fully developed at the end of the primary term. We need not determine whether they breached such a covenant by failing to file a designation with the county clerk because the Cannons have abandoned their claim for damages. Therefore, we turn to the production-and-allotment provision of paragraph 18.

In order to determine whether the Partens breached the production-and-allotment provision of paragraph 18, we must determine what portions of the lease were maintained by operations or production beyond the primary term. The parties made the following factual stipulations based on the statement of productive acreage filed with the Texas Railroad Commission:

- well number four held 148.33 acres at the end of the primary term and produced until August 1987;
- well number six held 161 acres at the end of the primary term and produced until May 1981;
- well number seven held 650 acres at the end of the primary term as a gas well, was reclassified as an oil well holding 161 acres in May 1982, and was producing at the time of trial; and
- well number eight held 161 acres at the end of the primary term and produced until July 1985.

■ Therefore, when the primary term ended on 7 January 1981, well number four maintained the lease on the 148.33–acre tract referred to as proration unit A, well number six maintained the lease on the 161–acre tract referred to as proration unit B, and well number eight maintained the lease on the 161–acre tract referred to as proration unit D. (See Appendix). The Partens argue that, because the lease was fully developed at the end of the primary term, the continuous production from well number seven maintained the entire lease. We disagree. As paragraph 18 specifically provides, "Production or operations on said allotted area by the Lessee shall maintain this lease in effect only with regard to the land within the described area." Therefore, after being reclassified as an oil well, production on well number seven maintained the lease only on the 161–acre tract referred to as proration unit C. *See Nafco Oil & Gas, Inc. v. Tartan Resources Corp.*, 522 S.W.2d 703, 708 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.) (holding that the habendum clause operated independently upon each tract and that production on one 160–acre tract would not maintain the lease on another 160–acre tract); *Hunt Oil Co. v. Dishman*, 352 S.W.2d 760, 764 (Tex.Civ.App.—Beaumont 1961, writ ref'd n.r.e.) (holding that, except for 40 acres allotted to oil production, the determinable fee on a 320–acre tract allotted to gas production was forfeited when a gas well was reclassified as an oil well and no reworking operations were attempted).

The Partens' first four points of error and the Cannons' single cross-point are each overruled except to the extent the trial court may have incorrectly concluded that the failure to comply with the designation-and-filing provision of paragraph 18 constituted the breach of a condition. The Partens' remaining points of error now require us to consider the extent to which

operations and production maintained the lease on proration units A, B, and D after well numbers four, six, and eight, respectively, ceased production.

■ The Partens contend in point five that the court erred in holding that the lease on proration unit A terminated when well number four ceased producing in August 1987 because the Cannons had already repudiated the lease. The parties stipulated that Ernest Cannon opposed any further drilling on the lease after October 1986. In *Kothmann v. Boley*, 158 Tex. 56, 308 S.W.2d 1, 4 (1957), the court held that lessors who wrongfully repudiate the lease cannot complain if the lessees have suspended operations on the property pending a determination of the controversy. Therefore, when well number four ceased producing in August 1987, the Partens were under no obligation to conduct further operations pending the resolution of this controversy. Point of error five is sustained.

■ In point six, the Partens contend that the trial court erred in withdrawing the case from the jury. Although the factual stipulations are sufficient to support a judgment that production has maintained the lease on proration units A and C, factual issues related to the wells on proration units B and D preclude such a determination, as a matter of law, on those portions of the lease.

For example, although well number six ceased producing in May 1981, the parties also stipulated that well number five was commercially producing through December 1989. If the trier of fact finds or the parties stipulate, as the evidence suggests, that well number five produced oil "with no cessation for more than ninety (90) consecutive days" since well number six ceased producing in May 1981, well number five, as a shallow well on proration unit B, would have maintained the lease on a 10–acre tract allotted to it according to paragraph 18 of the lease. Because the Cannons had already repudiated the lease when well number five ceased production in December 1989, the Partens would be under no obligation to conduct further operations pending the resolution of this controversy. *See Kothmann*, 308 S.W.2d at 4.

Likewise, the parties stipulated that well number eight ceased producing in July 1985. If the operations on either well number fifteen or well number nineteen, both on proration unit D, began within ninety days after operations ceased on well number eight, each of those wells would have maintained a portion of that unit in accordance with paragraph 18 of the lease. Again, if the Cannons had already repudiated the lease when well numbers fifteen and nineteen ceased production, the Partens would be under no obligation to conduct further operations pending the resolution of this controversy. Because of the factual issues that must be resolved before the perpetuation of the lease on proration units B and D can be determined, point of error six is sustained.

In point seven, the Partens contend that the trial court erred in holding that the lease terminated on the 40–acre tract surrounding well number fourteen. The parties stipulated that well number fourteen was producing at the time of trial. Because we have already held that proration unit A was maintained by well number four, we need not reach point seven. However, should the Partens elect not to commence reworking operations on well number four within ninety days after the conclusion of this litigation, the continued production from well number fourteen would maintain the lease on a portion of proration unit A. Nevertheless, unresolved fact issues, such as whether well number fourteen is a shallow or deep well, prevents the court from determining, as a matter of law, what portion of the lease would be maintained by production according to the allotment provisions of paragraph eighteen. Point of error seven is overruled.

We reverse that portion of the judgment declaring the oil and gas lease void, we affirm that portion of the judgment main-

taining the lease on the 161–acre tract allotted to well number seven and referred to as proration unit C, we render judgment that production from well number four maintained the lease on the 148.33–acre tract referred to as proration unit A, and we remand the balance of the cause for the trial court to determine whether the lease remains in full force and effect on all or portions of proration units B and D.

APPENDIX

Cannon "A" Lease
Wells Drilled and Operated
By J.R. Parten